**Bertha VASQUEZ, Plaintiff-Appellant,**

v.

**H. W. SNOW and Bill Cooper, Defendants-Appellees.**

No. 78–1704.

United States Court of Appeals, Fifth Circuit.

May 2, 1980.

Craig D. Caldwell, Alto, Tex., for plaintiff-appellant.

Richard E. Henderson, Arthur R. Petersen, Brent P. Burford, Fort Worth, Tex., for defendants-appellees.

Before HILL, KRAVITCH, and THOMAS A. CLARK, Circuit Judges.

JAMES C. HILL, Circuit Judge:

During the summer of 1976, the Fort Worth, Texas police were pursuing a robbery suspect named Sotelo. A warrant for his arrest had issued. The search for Sotelo was complicated, because "[h]e wouldn't stay anywhere over one or two nights, he had too many friends, and he was staying with all of them." Deposition of Wood, at 55. Shortly before August 26, 1976, a reliable informant told one Detective Wood that Sotelo "had been seen" with some frequency at plaintiff Vasquez' residence, and that Sotelo "maybe . . . was staying there part of the time." Id. at 22. Wood immediately relayed this information to one Detective Killough, who was then working on the Sotelo case. Two or three days later, on the morning of August 26, Wood similarly informed defendant Cooper.

Cooper went to his supervisor, co-defendant Snow, and related what Wood had told him about Sotelo. Snow advised Cooper that Detective Killough had already left to pursue Sotelo, and suggested that Cooper coordinate with Killough. Cooper reached Killough by radio, and Killough specified a rendezvous near three houses—not including plaintiff Vasquez'—that Killough "had in mind checking." Deposition of Cooper, at 27. The men met and, although neither

had a search warrant, proceeded to search the three houses. Not finding Sotelo, and by now accompanied by several other officers, Cooper and Killough advanced to the home of plaintiff Vasquez. The officers surrounded the house. Cooper knocked and announced himself; plaintiff's sister opened the door. Cooper informed her that he had an arrest warrant for Sotelo, that he believed Sotelo to be inside, and that he and his men would enter by force if necessary. Following a heated exchange, the woman capitulated and permitted Cooper to enter. Other officers came in the back door. The men searched the house without finding Sotelo, and then left.

Claiming that Cooper and Snow violated her right to be free from unreasonable searches and seizures, *see Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), Vasquez commenced the instant lawsuit under 42 U.S.C. § 1983 (1976). The trial court entered summary judgment for both defendants, holding that the entry of Vasquez' house was lawful, and that in any event defendants enjoyed qualified official immunity. Vasquez appeals. For the reasons below, we affirm as to Snow, but reverse as to Cooper.

At the threshold we note that appellant plainly asserts constitutional injury, sufficient to invoke § 1983. The federal Constitution specifically proscribes unreasonable searches. U.S.Const. amend. IV. *See Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) (applying fourth amendment to state action). It is of no moment that appellees may have trespassed at state law, *cf. Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), since "[s]ection 1983 makes a deprivation of [fourth amendment] rights actionable independently of state law." *Paul v. Davis,* 424 U.S. 693, 710 n.5, 96 S.Ct. 1155, 1165 n.5, 47 L.Ed.2d 405 (1976). We thus proceed immediately to the crux of the case, namely, whether the search of appellant's residence was constitutionally "reasonable." Resolution of this question turns on whether Cooper "reasonably believed" that Sotelo was inside. "[W]hen an officer holds a valid arrest warrant and reasonably believes that

its subject is within premises belonging to a third party, he need not obtain a search warrant to enter for the purpose of arresting the suspect." *United States v. Cravero,* 545 F.2d 406, 421 (5th Cir. 1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977). *Accord, United States v. Gaultney,* 606 F.2d 540 (5th Cir. 1979). The trial court found that Cooper held such a "reasonable belief" because he had reliably been informed that Sotelo frequented appellant's residence. We disagree.

The peripatetic Mr. Sotelo, according to the evidence, had been eluding arrest by constantly changing his hideout. The informant stated that appellant's house was one such hideout, and that Sotelo "had been seen" there two or three days before August 26. There was no indication, however, that Sotelo's movements were anything other than random. "He was staying on the south side one or two nights, on the short east side of Fort Worth up off Belknap for a night or two  .  .  .. He was staying all over town. *No one could say he was going to be at this house for any given length of time, or any other house.*" Deposition of Wood, at 55–56 (emphasis added). Under these circumstances, the search of appellant's residence was at best a shot in the dark. This is illustrated by nothing so much as Cooper's own actions on the day in question. Just hours before searching appellant's residence, Cooper participated in searches of three others, including Sotelo's home. Cooper obviously thought that Sotelo might just as easily have been hiding in these other places. Appellant's residence was merely the fourth in a series of suspected hideouts that the police chose to search, sans search warrant, that day. The fourth amendment plainly forbids such wholesale intrusions.

In *United States v. Cravero,* 545 F.2d 406 (5th Cir. 1976), *cert. denied,* 430 U.S. 983, 97 S.Ct. 1679, 52 L.Ed.2d 377 (1977), we recognized that investigating officers armed only with an arrest warrant have a limited license to search for the suspect in premises of a third party. The

limitation is the degree of certainty that the pursuers must have, before entering, that the person named in the arrest warrant is actually inside. For want of a better verbal formulation, we drew upon the jurisprudence of "probable cause," *e. g., United States v. Savage,* 564 F.2d 728 (5th Cir. 1977), as a helpful analogy. *Cravero,* 545 F.2d at 421. Thus, an arrest warrant permits pursuit into the premises of a third party if and only if the investigating officers' knowledge and trustworthy information would cause a man of reasonable caution to believe that the suspect "is in [that] *particular building." United States v. Phillips,* 497 F.2d 1131, 1136 (9th Cir. 1974) (emphasis added). *See Rice v. Wolff,* 513 F.2d 1280 (8th Cir. 1975), *rev'd on other grounds sub nom. Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Brown,* 467 F.2d 419 (D.C. Cir.1972). *But see Government of Virgin Islands v. Gereau,* 502 F.2d 914 (3d Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975) (probable cause to believe suspect inside insufficient to justify warrantless entry absent exigent circumstances). It follows conversely that an arrest warrant alone cannot sanction pursuit into a private residence where, as here, there exists a substantial likelihood that the suspect is at a location other than the target. We hold that Cooper did not have probable cause to believe that Sotelo was inside appellant's residence, and that his actions consequently violated the fourth and fourteenth amendments.

█ We now turn to the trial court's alternative holding that Cooper enjoyed qualified official immunity. *See Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The stated basis for this holding was Cooper's supposed "reasonable belief that Sotelo was in Plaintiff's residence." R. 109. We reverse and remand for two reasons: First, as we have held, Cooper did not reasonably believe that Sotelo *was* in plaintiff's residence. His information that Sotelo hid there, among other places simply was not enough. Second, and more importantly, immunity turns on the quite different question whether Cooper

"subjectively harbored a good faith belief that [his] actions were lawful," which belief, under the surrounding circumstances, "was reasonable." *Reimer v. Short,* 578 F.2d 621, 626 (5th Cir. 1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1425, 59 L.Ed.2d 635 (1979). "Reasonableness" in this context turns on whether the right infringed was "clearly established," such that Cooper should both have known of it and realized that his conduct "violated the constitutional norm." *Procunier v. Navarette,* 434 U.S. 555, 562, 98 S.Ct. 855, 860, 55 L.Ed.2d 24 (1978). *Accord, Cruz v. Beto,* 603 F.2d 1178 (5th Cir. 1979). Although we have held that Cooper acted unlawfully, the factual question remains whether his state of mind met the above standards. We therefore remand so that the trial court can reconsider its immunity holding in accordance with this opinion and the foregoing authorities.

█ The preceding discussion has referred only to appellee Cooper because codefendant Snow took no part in the unlawful search. Snow did not send Cooper to appellant's residence; to the contrary, when Cooper told him of the Vasquez lead, he suggested only that Cooper compare notes with Detective Killough. Although Snow was Cooper's nominal supervisor, we have "rejected respondeat superior as a theory of recovery under § 1983." *Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir. 1979) (per curiam). *See Watson v. Interstate Fire & Casualty Co.,* 611 F.2d 120 (5th Cir. 1980). Nor does appellant allege that supervisory omissions directly caused her injury, as for example a failure to control subordinates with known lawless propensities. *See Whitehurst v. Wright,* 592 F.2d 834 (5th Cir. 1979); *Sims v. Adams,* 537 F.2d 829 (5th Cir. 1976). Because the record shows that Snow breached no duty owed appellant, we affirm the judgment as to him.

AFFIRMED in part; REVERSED and REMANDED in part.