**Binti WATTS and Christopher Pryor, Plaintiffs–Appellants,**

v.

**COUNTY OF SACRAMENTO, a Municipal Corporation; Lorie Timberlake; Bryan Munn; Donald Black; and Jeffrey Morace, Defendants–Appellees.**

**No. 00–15099.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 2001

Filed July 16, 2001

Darryl Parker, Seattle, Washington, for the plaintiffs-appellants.

Jennifer E. Duggan, Porter, Scott, Weiberg & Delehant, Sacramento, California, for the defendants-appellees.

Before: GOODWIN, GRABER, and McKEOWN, Circuit Judges.

GOODWIN, Circuit Judge:

Plaintiffs Binti Watts and Christopher Pryor sued the County of Sacramento, and Sheriff's Deputies Jeffrey Morace, Lorie Timberlake, Donald Black, and Sergeant Bryan Munn for damages under 42 U.S.C. § 1983 for the unlawful entry of their home pursuant to an arrest warrant and their wrongful arrest and detention until the officers discovered that Pryor was not the murder suspect named in the warrant. The district court granted the defendants summary adjudication of the Fourth Amendment unlawful entry and detention claims and dismissed state tort claims for false arrest and imprisonment, leaving a truncated issue of an illegal search to be

tried by a jury. Plaintiffs appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse.

At approximately 3:30 p.m. on January 26, 1997, Sacramento's Crime Alert Center received an anonymous tip stating that Chris Burgess, a wanted murder suspect, was seen standing in front of a certain residence (later determined to be that of plaintiffs). Burgess was named in an arrest warrant issued by the Sacramento Superior Court on charges of murder and assault resulting in the death of a child under eight years of age. The warrant gave a known address for Burgess in San Jose, California, but did not list the address where the plaintiffs lived. The tipster claimed that Burgess was living at the address of the plaintiffs with his girlfriend and two small children and was seen standing outside the home.

At approximately 9:30 p.m. on the same day, Sergeant Munn, a deputy Sheriff, received a computer dispatch along with a call from another sergeant requesting that he investigate the Crime Alert tip. The dispatch informed Munn that: (1) Burgess was a black male standing 61 and weighing 200 pounds; (2) there was a warrant for Burgess's arrest on a murder charge; and (3) Burgess was possibly located at a certain address with his girlfriend and two children. The dispatch did not indicate that Burgess lived at the address provided by the tipster. Whether the officers knew before entering the house that Burgess could be identified by certain tattoos, or learned that fact after they had seized Pryor, is not clear from the record.

Munn assembled a team of five officers and briefed them on the information he had received from the computer dispatch. Officer Morace knocked on plaintiffs' door with his gun drawn, and Christopher Pryor answered the door. Morace observed that Pryor generally fit Burgess's description and inquired whether his name was Chris. Pryor responded affirmatively, which prompted Morace to instruct Pryor to back away from the door, put his hands up, and get down on his knees. Prior was in his boxer shorts and had no visible tattoos. Plaintiffs testified that, after Pryor answered the door and told the defendants that his name was Chris, Morace immediately rushed him and struck him on the forehead with the barrel of his gun. Defendants denied this version of events, including the use of force and, as there was no trial, the disputed facts remain unresolved.

It is undisputed that, after handcuffing Pryor, Morace seated him in a chair in the kitchen while officers Timberlake and Black performed a protective sweep of the house. Officer Timberlake found Watts, had her awaken her two children, and escorted her and the children to the bedroom, where they were held under guard. Sergeant Munn then obtained Pryor's identification, had Timberlake run a check on it, and discovered that it was valid. At some point, the officers also observed that Pryor's scantily clad body did not bear the identifying tattoos that Crime Alert indicated Burgess had. After about thirty to forty-five minutes, the officers released Pryor from the handcuffs, explained the mistake to him, and left the house, taking with them, according to the plaintiffs' account, a photograph they found while searching the closets and drawers in the house.

Plaintiffs brought this action, and the defendants filed their motion for summary adjudication of plaintiffs' § 1983 claims, as well as Watts's state causes of action for false arrest and false imprisonment. The district court granted summary adjudication in favor of the defendants on the § 1983 claims against the County of Sacramento, the § 1983 claims against the indi-

vidual defendants for illegal entry and detention, and Watts's state causes of action for false arrest and false imprisonment.

After a jury trial on the sole remaining cause of action-whether the individual officers violated plaintiffs' constitutional rights by searching their residence-the jury returned a verdict in favor of the defendants. Judgment was entered on the verdict, and the plaintiffs timely appealed.

The primary issue in this case is whether an anonymous tip about the location of a murder suspect,[1] together with the observations the police officers made when they arrived on the scene, gave the officers a reasonable belief that the suspect was both present in and a co-resident of the plaintiffs' home, thereby excusing their invasion of the home because they held an arrest warrant for Chris Burgess.

The district court held that, with respect to Pryor, an arrest warrant was sufficient authority to enter his home because the officers had reason to believe the suspect resides in the home or is merely waiting there. *See Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The court therefore dismissed Pryor's illegal-entry and detention claim, as well as Watts's illegal detention claim. With respect to Watts's illegal entry claim, the court held that the officers must have had at least a reasonable belief that Pryor was a co-resident of the home in order to enter. *See Steagald v. United States,* 451 U.S. 204, 212–14, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). The district court concluded that the information in the anonymous tip, coupled with the fact that Pryor answered the door in his boxer shorts and answered to the name of "Chris" were sufficient to satisfy even the more stringent probable cause standard. The court

therefore dismissed Watts's illegal-entry claim.

In *Payton,* the Supreme Court concluded that "an arrest warrant ... implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton,* 445 U.S. at 603, 100 S.Ct. 1371. In *Steagald,* the Court clarified how the rule announced in *Payton* applies to situations in which the suspect named in the warrant is found in the home of a third party. The Court held that the officers in *Steagald* acted improperly in entering the home of a third party, absent exigent circumstances or consent, based on their belief that the suspect might be a *guest* there. *See Steagald,* 451 U.S. at 212, 101 S.Ct. 1642. "Regardless of how reasonable this belief might have been, it was never subjected to the detached scrutiny of a judicial officer." *Id.* at 213, 101 S.Ct. 1642. Thus, "the search of petitioner's home was no more reasonable from petitioner's perspective than it would have been if conducted in the absence of any warrant." *Id.* at 216, 101 S.Ct. 1642.

■ If the suspect named in the arrest warrant is a guest of the third party, then, absent exigent circumstances, the police must obtain a search warrant for the third party's dwelling to avoid violating the third party's Fourth Amendment rights. *See United States v. Litteral,* 910 F.2d 547, 553 (9th Cir.1990). However, "if the suspect is a co-resident of the third party, then *Steagald* does not apply, and *Payton* allows both arrest of the subject of the arrest warrant and use of evidence found against the third party." *Id.* Thus, under *Payton,* an officer must have a reasonable belief that the suspect named in the arrest

---

1. For the kind of scrutiny courts must apply to anonymous tips, see *United States v. Mor-* *ales,* 252 F.3d 1070, 1073–77 (9th Cir.2001).

warrant resides in the third party's home and that he is actually present at the time of entry into the home. *See United States v. Risse*, 83 F.3d 212, 216 (8th Cir.1996); *Perez v. Simmons*, 900 F.2d 213, 213 (9th Cir.1990).

■ The remaining question is what circumstances are sufficient to give officers a reasonable belief that a suspect named in an arrest warrant is both a co-resident of the home and present at the time of entry. We first address plaintiff Pryor's illegal entry and detention claims. Whether the officers had a reasonable belief that Pryor was the suspect Burgess, and whether they therefore had a reasonable belief that Burgess was present in the Watts home, are mixed questions of law and fact. *See, e.g., United States v. Allen*, 235 F.3d 482, 488 (10th Cir.2000) (holding that the facts that the vehicle described in the tip was parked outside the home, that Allen gave inconsistent answers to officers' questioning and that, in addition, the defendant fit the physical description of the suspect were sufficient to support the officers' reasonable inference that the defendant was actually the suspect and, therefore, that there was probable cause to arrest him.) We cannot say as a matter of law that it was reasonable for the officers to believe that Pryor was Burgess. As a consequence, summary judgment was inappropriate on Pryor's § 1983 illegal entry and detention claims.

We now turn to Watts's claim for illegal entry. Courts have generally required substantial evidence pointing to the suspect's co-resident status to create a reasonable belief that he lives in the home of a third party. *See Risse*, 83 F.3d at 216–17; *Valdez v. McPheters*, 172 F.3d 1220, 1223 (10th Cir.1999). In cases involving an anonymous tip where courts have found at least a reasonable belief that the suspect lived with a third party, the evidence supporting such a belief was far more substantial than the evidence in the case at bar. *See United States v. Clayton*, 210 F.3d 841, 844–45 (8th Cir.2000) (anonymous tip corroborated by officer's independent verification of suspect's address, as well as suspect's friend's face-to-face indication that suspect was inside); *United States v. Harper*, 928 F.2d 894, 896–97 (9th Cir.1991) (anonymous tip corroborated by (1) confirmation that the home was leased to suspect's family, (2) fact that suspect's two brothers lived there, (3) police observation of suspect entering home with his own keys, (4) evidence suggesting that suspect had no other residence, and (5) police observation that cars parked outside home belonged to "known associates" of suspect); *United States v. Dally*, 606 F.2d 861, 862 (9th Cir.1979) (anonymous tip corroborated by ATF agents' observation that suspect's car was parked outside defendant's home overnight, suspect had a key to defendant's home, and suspect returned to the home with dry cleaning in hand); *Bratton v. Toboz*, 764 F.Supp. 965, 972 (M.D.Pa.1991) (finding reasonable belief only where there was a large "volume" of anonymous tips that suspect lived at the residence).

■ Here, the anonymous tipster was never identified, and there is no evidence that the sheriff's department made any effort to check directories and verify that the address given by the tipster, but not listed in the warrant, was in any way connected with Burgess. Thus, the mere fact that Pryor answered the door of his girlfriend's home in his boxer shorts did not establish a reasonable belief that he lived there. Summary adjudication of appellant Watts's unlawful entry claim was therefore also error, and we reverse.

■ Appellants argue that the district court erred in dismissing appellant Watts's state law claims for false arrest and im-

prisonment. Under California law, the torts of false arrest and false imprisonment are not separate torts, as false arrest is "but one way of committing a false imprisonment." *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 63 Cal.Rptr.2d 842, 937 P.2d 273, 278 n. 3 (1997). A cause of action for false imprisonment based on unlawful arrest will lie where there was an arrest without process followed by imprisonment. *See City of Newport Beach v. Sasse*, 9 Cal.App.3d 803, 88 Cal.Rptr. 476, 480 (1970); *Dragna v. White*, 45 Cal.2d 469, 289 P.2d 428 (1955). Here, the officers imprisoned Watts: After entering the residence and handcuffing Pryor, officers took Watts into a bedroom and detained her there. Because the officers had unlawfully entered the home, and unlawfully arrested Pryor, the officers' safety concerns did not immunize their interference with the liberty of Watts. The district court erred in dismissing Watts's false-imprisonment claim.

■ A municipality may be held liable under § 1983 if the plaintiff proves that a government employee committed the alleged violation pursuant to a formal government policy or a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). We have held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir.1988) (citation omitted). Moreover, the district court held that, "[b]ecause defendants are entitled to summary judgment on the merits of plaintiffs' claims under section 1983 for

illegal entry and detention, the court need not determine whether municipal liability lies for those claims." Because the standard for imposing municipal liability on a motion to dismiss depends on facts yet to be developed, and because the basis for the district court's refusal to reach the municipal-liability claim is flawed, we must remand the claim for further consideration by the district court.

Finally, because we reverse the grant of summary judgment in favor of the defendants on plaintiffs' § 1983 claims, the district court erred in instructing the jury that the arrest of Pryor was lawful in the fragment of the case that went to trial, the verdict is therefore a nullity, and that claim must be remanded for trial.

For the foregoing reasons, the judgment appealed from is

**REVERSED** and **REMANDED**.