**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Clarence Kenneth GORMAN,**
**Defendant–Appellant.**

**No. 02–50053.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2002.

Filed Dec. 31, 2002.

Stephen D. Lemish, El Cajon, CA, for the defendant-appellant.

Steven F. Miller, Assistant United States Attorney, San Diego, CA, for the plaintiff-appellee.

Before: PREGERSON, THOMPSON, and WARDLAW, Circuit Judges.

PREGERSON, Circuit Judge.

On October 19, 2001, Clarence Kenneth Gorman ("Gorman") entered a conditional guilty plea, pursuant to FED. R. CRIM. P. 11(a)(2), to possession of a counterfeit postal key, in violation of 18 U.S.C. § 1704. Gorman now appeals the two issues he reserved for review: the District Court's denial of his motion to suppress certain evidence and the denial of his motion to dismiss based on the Speedy Trial Act, 18 U.S.C. § 3161. Gorman argues that the District Court erred by not suppressing evidence police officers seized upon entering a third-party residence pursuant to an arrest warrant for Gorman. In addition, Gorman argues that his Speedy Trial Act

rights were violated as over 90 days ran on the Speedy Trial clock and, therefore, the district court erred by not dismissing the indictment.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Before dawn, on November 6, 2000, while it was still dark outside, Helen Anzelmo Vestle heard loud banging noises outside her home on Rancho Hills Drive in San Diego, California.

Helen testified at an evidentiary hearing that after hearing the loud banging noises, Gorman, her boyfriend, woke up and told her, "I think it's the police." Helen got out of bed. Wearing only her nightshirt, she walked to the door. When she saw the police outside,. Helen asked, "Can I help you?" According to Helen, the police told her they needed her to open the door. Helen explained that she wasn't dressed and asked why she needed to open the door. The officers told Helen that they had a warrant for Vestle Anzelmo. Helen again asked why she needed to open the door and the officers again stated that they had a warrant; she opened the door.

Three officers were standing at the door. The officers asked if Ken Gorman was there and told Helen she could be arrested for harboring a federal fugitive. "I was kind of bewildered . . . [a]nd I was really nervous because my mom and the baby, they were in the house," Helen testified. She told the officers, "Look, no one's in the house except for my mom and the baby." The officers asked what room Gor-

man was in; again, Helen stated that no one was in the house but her mom and her baby. The officers told Helen to sit down outside and entered her home.

At the same evidentiary hearing, San Diego Police Officer Lawrence Hal testified that he first learned about Gorman in September or October 2000, when a citizen informed him that a man named "Kenny" was stealing mail using mail box keys. The citizen also told the police that Kenny had several cars parked by a housing complex where he supposedly lived, and that a male and female were staying in Kenny's white van. Officer Hal and his partner Officer Steve Schnick went to the white van and there met David Ordway. Ordway informed the officers that Kenny's full name was Clarence Kenneth Gorman, and that Kenny was staying with his girlfriend Helen because he knew that he was wanted by the police. After learning this information, Officer Hal ran a records check and learned that there was an active federal felony arrest warrant for Gorman, who was in violation of the conditions of his supervised release.[1] Officer Hal also conducted an ARJIS[2] check on Gorman's companions looking for the name "Helen." They located a Helen, a known associate of Gorman, who lived on Rancho Hills Drive.

Armed with the above-stated information but without a search warrant, four to five San Diego police officers arrived at the Rancho Hills Drive address around 4:30 a.m. on November 6, 2000. The officers identified a Volkswagen parked in front of the residence as belonging to Gorman. For approximately an hour the officers kept the home under surveillance, but did not see Gorman go in or out. Around

---

1. In 1999, Gorman was sentenced to 6 months custody and three years supervised release after he pleaded guilty to possession of a counterfeit postal key, in violation of 18 U.S.C. § 1704.

2. ARJIS is the Automated Regional Justice Information System, a countywide criminal justice database.

5:30 a.m., the officers knocked on the front door—"pound[ed] on the front door pretty good" according to Officer Hal—but no one answered. Officer Hal thought he heard someone yell from inside, "Who is it?" The officers moved from the front door to the back door where they thought the sound originated and knocked again. When Helen opened the door, Officer Hal introduced himself as an officer with the San Diego Police Department and told Helen they had an arrest warrant for Kenny Gorman.

Officer Steve Schnick testified that Helen told the officers that it was her mom's house and her son was in the home. The officers repeatedly asked "Where's Kenny?" Helen kept looking over her shoulder and finally told the officers that Kenny was in bed.

According to Officer Hal, however, Helen immediately told them that Kenny was in bed sleeping. Officer Hal removed his firearm from his holster. He ordered Helen to step outside by the front door with the other officers. Officer Hal recalled that Helen was told there was a traffic warrant for her, but was unable to "recall whether I mentioned it or whether someone else did" or "at what point we told her about her traffic warrant."

With their flashlights shining, Officers Hal and Schnick entered Helen's home and saw Gorman in bed. The officers, with their guns drawn, shined their flashlights on Gorman and told him "San Diego Police Department, we have a warrant for your arrest." During the arrest, the officers found three mailbox keys and Gorman's wallet which contained several checks that were issued to other people. In Gorman's car the officers found a plastic bag of checks also issued to other people. The officers arrested Gorman for violation of his supervised release.

On November 29, 2000, an indictment was filed in the United States District Court for the Southern District of California, charging Gorman with possession of a postal key, in violation of 18 U.S.C. § 1704, and possession of stolen mail, in violation of 18 U.S.C. § 1708. The court appointed counsel for Gorman.

On December 29, 2000, Gorman brought two motions: the first to suppress evidence seized subsequent to the arresting officers' entry into the home of a third-party without a search warrant; the second to exclude evidence of other crimes, wrongs, or acts under FED. R. EVID. 404(b), including his 1999 conviction for possessing a counterfeit postal key.

On February 5, 2001, the District Court conducted a hearing on the suppression motion. The District Court found that "at the most, [the officers] had reasonable suspicion to believe that they could locate Kenny Gorman at [Helen's] residence." The District Court stated:

> It's not at all clear to me that they had even a reasonable suspicion to believe that Kenny Gorman was in that residence at that time.... [T]hey knew that he was connected with a woman named Helen, and that one of his cars was out front. But since at least he's got two [cars], because he's letting another guy sleep in one, I'm not sure that the presence of the car out there indicates that Kenneth Gorman, to any reasonable person, is likely to be in the house at that moment. It's an indication he could be—I mean, reasonable suspicion, I guess I would say. But probable cause, no.

Finding there was no probable cause, "no consent, no exigency, and no search warrant, and it was nighttime," the District Court granted Gorman's motion to suppress the evidence. Gorman's motion to exclude evidence of other crimes, wrongs, or acts under FED. R. EVID. 404(b) was not heard.

On February 26, 2001, the government filed a motion for reconsideration of the District Court's order suppressing evidence. The government correctly argued that *United States v. Underwood*, 717 F.2d 482 (9th Cir.1983) (en banc), controlled.

On March 5, 2001, the District Court held a hearing on the government's motion to reconsider its February 5, 2001 ruling that the police officers' entry into Helen's residence was illegal. Although troubled by the nighttime entry of a third-party home, the District Court reversed itself. In detail, the court explained:

> This wasn't some situation that would justify a nighttime entry. And yet we've got a nighttime entry in this case because there was an arrest warrant. And except for *Underwood*, they have the right—or because of *Underwood*, they have a right to invade really any house where they have reason to believe ... Mr. Gorman may be present, and that's all they would have in this case. They clearly didn't have probable cause.

> The other thing that was the anomaly to me is if the officers had tried to go get a search warrant, I do not believe a neutral magistrate would have executed a neutral search warrant and found that the tip from the guy who was sleeping in his car and the presence of Gorman's car indicated probable cause to believe that Mr. Gorman was located in this residence.

> So again ... you couldn't do nighttime, there wasn't probable cause but, because it's a human being, you can—you can forcibly enter the house and seize him ....

At the end of the reconsideration hearing, the District Court scheduled April 9, 2001, to hear Gorman's motion in limine to suppress evidence of other crimes, wrongs, or acts under FED. R. EVID. 404(b). Gorman's trial was scheduled to begin the next day, April 10, 2001. On March 19,

2001, Gorman moved for a competency evaluation. The District Court vacated the dates for the hearing on Gorman's 404(b) motion and Gorman's trial. A competency hearing was scheduled on April 16, 2001. The court expressly excluded the time between March 19, 2001, and April 16, 2001, from the Speedy Trial clock.

Gorman was found competent to stand trial. On April 16, 2001, new counsel, Mr. Lemish, was appointed to replace Gorman's previous counsel. On April 18, 2001, Mr. Lemish appeared before the district court and requested a continuance to give him time to prepare for trial. The court scheduled a status hearing for May 11, 2001, and ruled that the time between April 18, 2001, and May 11, 2001, was also excludable from the Speedy Trial clock.

On July 19, 2001, Mr. Lemish filed motions to suppress evidence on Fourth Amendment grounds. On July 26, 2001, the day the District Court was to hear the suppression motions, Judge Judith N. Keep was ill and the motions were heard by Judge Jeffrey T. Miller. Judge Miller took the motions under submission; however, he rendered no decision and set a further hearing on September 24, 2001, before Judge Keep.

On September 20, 2001, Judge Keep ordered that a hearing be held on October 12th on the Speedy Trial Act issue and on two pending motions: Gorman's motion to exclude evidence under 404(b) and Gorman's motion to suppress evidence obtained allegedly in violation of Gorman's Fourth Amendment rights. Gorman's trial was scheduled for October 23, 2001.

On September 28, 2001, the Government filed a motion in limine to admit prior act evidence under FED. R. EVID. 404(b), including Gorman's prior conviction in 1999 of possession of a counterfeit postal key, in violation of 18 U.S.C. § 1704. On October

1, 2001, Gorman filed a motion to dismiss the indictment under the Speedy Trial Act.

As scheduled, on October 12, 2001, the District Court heard the motion to dismiss the indictment under the Speedy Trial Act and denied that motion. The District Court also denied Gorman's motion to suppress evidence obtained allegedly in violation of Gorman's Fourth Amendment rights. The motion to exclude evidence under 404(b) was set to be heard on the morning of October 23, 2001, before the start of trial.

Four days before trial, Gorman entered a conditional guilty plea, pursuant to FED. R. CRIM. P. 11(a)(2), to possession of a counterfeit postal key. Under the conditional guilty plea, Gorman preserved the two issues which are the subject of this appeal: the District Court's denial of his Fourth Amendment suppression motion, and the District Court's denial of his motion to dismiss the indictment under the Speedy Trial Act.

To resolve Gorman's motion to suppress evidence seized by police who entered a third-party residence pursuant to an arrest warrant, we must decide whether the "reason to believe" standard enunciated in *Underwood* is the equivalent of "probable cause" or "reasonable suspicion."[3] We hold that the "reason to believe" standard of *Underwood* embodies the same standard of reasonableness inherent in probable cause. In addition, we must decide whether the District Court erred in finding there was no Speedy Trial Act violation warranting dismissal of Gorman's indictment. On this issue, we hold that because Gorman's motion to exclude evidence under F ED. R. EVID. 404(b) was pending from December 29, 2000, to the day Gorman entered a conditional guilty plea on October 19, 2001, that time was excluded

from the Speedy Trial calculation and thus there was no Speedy Trial violation.

## II. STANDARD OF REVIEW

■ We review the District Court's denial of Gorman's motion to suppress evidence *de novo;* the District Court's factual findings are reviewed for clear error. *See United States v. Summers,* 268 F.3d 683, 686 (9th Cir.2001), *cert. denied,* 534 U.S. 1166, 122 S.Ct. 1182, 152 L.Ed.2d 124 (2002). The District Court's denial of Gorman's motion to dismiss for noncompliance with the Speedy Trial Act is reviewed *de novo. See United States v. Lam,* 251 F.3d 852, 855 (9th Cir.2001), *amended by* 262 F.3d 1033 (9th Cir.2001), *cert. denied,* 534 U.S. 1013, 122 S.Ct. 503, 151 L.Ed.2d 413 (2001).

## III. DISCUSSION

A. District Court's Denial of Gorman's Motion to Suppress Certain Evidence

■ Under *United States v. Underwood,* 717 F.2d 482 (9th Cir.1983) (en banc), Gorman's Fourth Amendment rights would not have been violated when the police entered a third-party residence with an arrest warrant for Gorman, but without a search warrant or consent, if the police had "reason to believe" that he was present. The "reason to believe" standard first espoused by the Supreme Court in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), was not defined in *Payton* or in subsequent cases. *Payton,* 445 U.S. at 603, 100 S.Ct. 1371 ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is *reason to believe* the suspect is within.") (emphasis added). Nor have we explicitly defined

---

**3.** The District Court seemingly applied the latter because it found that there was no

probable cause to believe Gorman was within Helen's home.

the "reason to believe" standard. We now hold that the "reason to believe," or reasonable belief, standard of *Payton* and *Underwood* embodies the same standard of reasonableness inherent in probable cause.[4]

### 1. "Reason to Believe" Standard

Gorman contends that his case should be distinguished from *Underwood*, and his suppression motion should be granted because the District Court found that there was no probable cause to believe that Gorman was either residing at Helen's home or was present at the time the officers entered. In response, the government asserts that "*Underwood* does not require probable cause; it held that the officers need only have a 'reason to believe the person named in the warrant is present.' " At oral argument before us and before the District Court, the government maintained that the "reason to believe," or reasonable belief, standard is akin to "reasonable suspicion." While the government correctly states that the "reason to believe" standard of *Underwood* applies, the government incorrectly argues that *Underwood* does not require probable cause or an equal standard of reasonableness.

■ Citing *Underwood*, we recently stated that "[t]here can be little doubt that police can enter a dwelling for the purpose of executing an arrest warrant. That, however, does not mean that officers

armed with a warrant can enter a private home at any time or for any reason. Quite the contrary." *United States v. Albrektsen*, 151 F.3d 951, 953 (9th Cir.1998) (citations omitted). An arrest warrant forms only the "necessary rather than sufficient basis" for entry into a home. *Id.* In addition to an arrest warrant, there must be "reason to believe the suspect is within" the residence. *Payton*, 445 U.S. at 603, 100 S.Ct. 1371.

In *Underwood* this court en banc addressed the issue of a non-consensual search of a third-party residence with only an arrest warrant for the defendant—the same issue now before us. We relied upon *Payton* in holding that "an arrest warrant [for the suspect] plus reason to believe the suspect is present are sufficient to permit entry [into a third-party residence] without a search warrant," and reasoned that:

[f]or the purpose of determining whether Underwood's rights were violated, nothing turns on [whether he was in his own home or the home of a third person]. A person has no greater right of privacy in another's home than in his own. If an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that person's Fourth Amendment privacy rights in his own home, they necessarily suffice to protect his privacy rights in the home of another. *United States v.*

---

4. Our cases have interchangeably used "reason to believe," "reasonable belief" and "reasonable grounds for believing" as standards when determining the legality of an officer's entry into a home to execute a search warrant. *See, e.g., United States v. Litteral*, 910 F.2d 547, 554 (9th Cir.1990) (Police must "have reasonable grounds for believing that the subject of the arrest warrant is present at the time of the warrant's execution."); *Case v. Kitsap County Sheriff's Dep't.*, 249 F.3d 921, 930–31 (9th Cir.2001) (citing *Payton's* "reason to believe the suspect is presently in the residence" requirement and holding that "the

deputies could have *reasonably believed* that Case was in the house") (emphasis added); *Watts v. County of Sacramento*, 256 F.3d 886, 889–90 (9th Cir.2001) ("[U]nder *Payton*, an officer must have a *reasonable belief* that the suspect named in the arrest warrant ... is actually present at the time of the entry into the home.") (emphasis added). *See also United States v. Lovelock*, 170 F.3d 339, 342 (2d Cir.1999) (Officers "may enter a suspect's residence ... in order to effectuate an arrest warrant where a reasonable belief exists that the suspect is present.").

*Clifford,* 664 F.2d 1090, 1093 (8th Cir. 1981).

*Underwood,* 717 F.2d at 484. Thus, Gorman's suppression motion can be granted only if the officers *did not* have reason to believe that Gorman was present in Helen's home.

Clearly, it is the "reason to believe" standard as espoused by the Supreme Court in *Payton* and by this Court in *Underwood* that applies to the case before us. But the "reason to believe" standard is far from clear.[5] The Supreme Court did not define the "reason to believe" standard in *Payton*[6] nor has it defined the standard subsequently. We did not define the "reason to believe standard" in *Underwood* nor have we explicitly defined the standard subsequently. We now conclude that the "reason to believe" standard of *Payton* and *Underwood* embodies the same standard of reasonableness inherent in probable cause.

In *Underwood,* the majority states that the District Court held that the officers had probable cause to believe Underwood was in the house when they entered; however, the majority does not define the "reason to believe" standard of *Payton. Underwood,* 717 F.2d at 483. The dissent primarily takes issue with what it finds to be an "unwarranted extension of *Payton v.*

*New York*" and "an erroneous reading of the Supreme's Court more recent decision in *Steagald.*" *Id.* at 486, 487 (citations omitted).[7]

The *Underwood* dissent warns of the possible misinterpretations of *Payton's* "reason to believe" standard: "[T]he majority rule permits searches of any home based only on 'a reason to believe' the subject of an arrest warrant is present. The justification for the search *may* thus be made in the field on less than probable cause." *Id.* at 490 (emphasis added). Such an interpretation of "reason to believe" as "less than probable cause," the dissent states is "expressly rejected" by the Supreme Court in *Steagald:*

A contrary conclusion—that the police, acting alone and in the absence of exigent circumstances, may decide when there is sufficient justification for searching the home of a third party for the subject of an arrest warrant—would create a significant potential for abuse. Armed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances.... Moreover, an arrest warrant may serve as the pretext for entering a home in which the police have a suspicion, but not probable cause

---

**5.** "Just what [the 'reason to believe' standard] means continues to be a matter of considerable uncertainty," writes LaFave in his treatise on the Fourth Amendment. Wayne R. LaFave, *Search and Seizure* § 6.1(a) at 226. "The 'reason to believe' standard was not defined in *Payton,* and since *Payton,* neither the Supreme Court nor the courts of appeal have provided much illumination." *Id.* at 226 n. 18 (quoting *United States v. Magluta,* 44 F.3d 1530, 1534 (11th Cir.1995)). LaFave concludes that the reason to believe standard should be treated similarly to probable cause. *Id.* at 228.

**6.** The Court, however, did note that it was not "argued that the police lacked probable cause

to believe the suspect was at home when they entered." *Payton,* 445 U.S. at 583, 100 S.Ct. 1371. Justice White, writing for the dissent, equated the "reason to believe" requirement espoused by Court with probable cause: "[U]nder today's decision, the officers apparently need an extra increment of probable cause when executing the arrest warrant, namely, grounds to believe that the suspect is within the dwelling." *Id.* at 616 n. 13, 100 S.Ct. 1371 (White, J., dissenting).

**7.** The dissent would have followed *Steagald* and adopted a "bright-line rule" that "police must obtain a search warrant to enter and search a dwelling other than a suspect's own home." *Underwood,* 717 F.2d at 491.

to believe, that illegal activity is taking place.

*Id.* at 491 (quoting *Steagald,* 451 U.S. 204, 215, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)). The majority, however, does not address the question whether "reason to believe" is different from or similar to probable cause.

In attempting to determine the standard for reasonable belief, the Fifth Circuit stated that:

> [p]robable cause is essentially a concept of reasonableness, but it has become a term of art in that it must always be determined by a magistrate unless exigent circumstances excuse a search warrant. When one says "probable cause," therefore, one also says either "magistrate" or "exigent circumstances." *Reasonable belief embodies the same standards of reasonableness* but allows the officer, who has already been to the magistrate to secure an arrest warrant, to determine that the suspect is probably within certain premises without an additional trip to the magistrate and without exigent circumstances.

*United States v. Cravero,* 545 F.2d 406, 421 (5th Cir.1977) (emphasis added).

Further illustrating the similarity between probable cause and the "reason to believe" standard, three years after *Cravero,* the Fifth Circuit "[f]or want of a better verbal formulation ... drew upon the jurisprudence of 'probable cause.'" *Vasquez v. Snow,* 616 F.2d 217, 220 (5th Cir.1980).

Using the probable cause analogy, the Fifth Circuit found "an arrest warrant permits pursuit into the premises ... only if the investigating officers' knowledge and trustworthy information would cause a man of reasonable caution to believe that the suspect 'is in (that) particular building.'" *Id.* (quoting *United States v. Phillips,* 497 F.2d 1131, 1136 (9th Cir.1974)).[8]

Our own case law supports equating the "reason to believe" standard of *Payton* and *Underwood* to the standard of reasonableness embedded in probable cause, not reasonable suspicion. In *Watts v. County of Sacramento,* 256 F.3d 886 (9th Cir. 2001), we found that "[c]ourts have generally required substantial evidence ... to create a reasonable belief." *Id.* at 890. In *United States v. Phillips,* 497 F.2d 1131 (9th Cir.1974), we ruled that an "agent must have probable cause to believe that the person he is attempting to arrest, with or without a warrant, is in a particular building" before he could enter the building by ruse or any other means. *Id.* at 1136. Three years after *Underwood* was decided, we found that "[e]ntry into a person's home is so intrusive that such searches always require probable cause regardless of whether some exception would excuse the warrant requirement." *United States v. Howard,* 828 F.2d 552, 555 (9th Cir.1987) (citing *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), and *United States v. Winsor,* 816

---

**8.** On this subject, the Eleventh Circuit stated that "[d]ue to the lack of authority on point, it is difficult to define the *Payton* 'reason to believe' standard, or to compare the quantum of proof the standard requires with the proof that probable cause requires." *United States v. Magluta,* 44 F.3d 1530, 1535 (11th Cir. 1995). The court then held that for law enforcement officers "to enter a residence to execute an arrest warrant for a resident of the premises, the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a

reasonable belief that ... the suspect is within the residence at the time of the entry." *Id.* The Tenth Circuit expressly states that probable cause "requires a higher knowledge standard" on the part of law enforcement officers and adopts *Magluta's* holding that "the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that ... the suspect is within the residence at the time of the entry." *Valdez v. McPheters,* 172 F.3d 1220, 1224–26 (10th Cir.1999) (quoting *Magluta,* 44 F.3d at 1535).

F.2d 1394, 1399 (9th Cir.1987), *rev'd en banc,* 846 F.2d 1569, 1574 (9th Cir.1988)).

Since *Underwood,* our cases have come to equate the reasonableness inherent in "reason to believe" with the reasonableness inherent in probable cause. In *United States v. Harper,* 928 F.2d 894 (9th Cir.1991), for example, we explicitly used the probable cause standard to find that the entry and search of David and Adrian Harper's residence pursuant to an arrest warrant for David was legal: "Once the police 'possess[ed] an arrest warrant and probable cause to believe [David] was in his home, the officers were entitled to search anywhere in the house in which [he] might be found.'" *Id.* at 897 (quoting *Maryland v. Buie,* 494 U.S. 325, 332–33, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990)).

The Tenth Circuit, however, criticizes *Harper* and contends that we provided no rationale for adopting the probable cause standard, except for "merely citing [our] prior decision in *Perez v. Sim[m]ons* [900 F.2d 213 (9th Cir.1990)]." *Valdez v. McPheters,* 172 F.3d 1220, 1224–25 (10th Cir.1999) (citation omitted). The Tenth Circuit notes that *Perez* used "reasonable grounds for believing" as the appropriate standard, not probable cause.[9] *Valdez,* 172 F.3d at 1225 n. 1. The phrase "reasonable grounds to believe," however, is often synonymous with probable cause. In *Payton,* Justice White states that "the officer entering to arrest must have *reasonable grounds to believe,* not only that the arrestee has committed a crime, but also that the person suspected is present in the house at the time of the entry." *Payton,*

445 U.S. at 616, 100 S.Ct. 1371 (White, J., dissenting) (emphasis added). Under a footnote to that statement, Justice White then discusses the "quantum of *probable cause* necessary to make a valid home arrest"—clearly equating "reasonable grounds to believe" with probable cause. *Id.* at 616 n. 13, 100 S.Ct. 1371 (emphasis added).[10]

*United States v. Clifford,* the Eighth Circuit case whose reasoning we followed in *Underwood,* also supports using the reasonableness standard embedded in probable cause for the "reason to believe" standard. In *Clifford,* as in *Underwood* and as in the case before us, the subject of the arrest warrant asserted that the non-consensual entry into the home of a third-party without exigent circumstances or a search warrant was unconstitutional. *Clifford,* 664 F.2d at 1092. *Clifford* held that "*Payton* authorizes entry on the basis of the existing arrest warrant for the defendant and *probable cause* to believe that the defendant was within the premises." *Id.* at 1093 (emphasis added).

Nothing in *Underwood* or *Payton* precludes us from using the same standard of reasonableness embedded in probable cause as the standard of reasonableness for the "reason to believe" standard. Rather, *Underwood, Payton,* and our subsequent cases suggest that the standard of probable cause, and not of reasonable suspicion, is the standard already being applied in this Circuit. Thus, like the Fifth Circuit, we too "dr[a]w upon the jurisprudence of 'probable cause.'" We therefore

**9.** In *United States v. Litteral,* 910 F.2d 547 (9th Cir.1990), we again found that "police must also have reasonable grounds for believing that the subject of the arrest warrant is present at the time of the warrant's execution." *Id.* at 554.

**10.** Justice White states that "the officers apparently need an extra increment of probable cause when executing the arrest warrant, namely, grounds to believe that the suspect is within the dwelling." *Payton,* 445 U.S. at 616 n. 13, 100 S.Ct. 1371 (White, J., dissenting). *See also* LaFave, *Search and Seizure* 799 (in the Index, "See Probable Cause" is listed under "Reasonable Grounds to Believe").

find that the "reason to believe," or reasonable belief, standard of *Payton* and *Underwood* should be read to entail the same protection and reasonableness inherent in probable cause.

B. District Court's Denial of Gorman's Motion to Dismiss Based on Speedy Trial Violation

■ The District Court did not err in denying Gorman's motion to dismiss for a violation of the Speedy Trial Act. Gorman's motion to exclude evidence under FED. R. EVID. 404(b) was pending during the entire time between December 29, 2000, and October 19, 2001, when Gorman entered a conditional guilty plea. Under 18 U.S.C. § 3161(h)(1)(F) that time is excluded from the calculations of the Speedy Trial Act; thus, there was no violation of the Speedy Trial Act.

The Speedy Trial Act, 18 U.S.C. § 3161 et seq., requires that Gorman's trial commence within 70 days of November 29, 2000, the day he was arraigned. *See* 18 U.S.C. § 3161(c)(1). The Act sets forth several types of excludable delay that do not count against the 70–day limit, including "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on ... such motion." 18 U.S.C. § 3161(h)(1)(F). *See Henderson v. United States,* 476 U.S. 321, 330, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986) (holding that "Congress intended subsection (F) to exclude ... all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'").

Thus, the District Court correctly found that there was no violation of the Speedy Trial Act because Gorman filed a motion to exclude evidence of other crimes, wrongs, or acts under FED. R. EVID. 404(b) that was pending during the entire time between December 29, 2000, when it was filed, and October 1, 2001, when Gorman moved to dismiss on Speedy Trial grounds.

Gorman contends that his pretrial motion to exclude 404(b) evidence is analogous to the motion to dismiss for prosecutorial misconduct in *United States v. Clymer,* 25 F.3d 824 (9th Cir.1994). In *Clymer,* instead of conducting an evidentiary hearing and deciding the pretrial motion before trial, the District Court continued the motion to dismiss until after trial. We found that *Clymer* was not an "ordinary case" of pretrial delay and that the time between the filing of the motion and the hearing was not excluded because the delay did not result from the pretrial motion when the hearing on the motion would be after trial. *Clymer,* 25 F.3d at 830, 831. Gorman's argument, however, fails because this Court held that "the exception in *United States v. Clymer,* 25 F.3d 824, 830–31 (9th Cir.1994) (holding that time between filing of pretrial motion and hearing was not excludable) applies only when a motion is decided after trial." *United States v. George,* 85 F.3d 1433, 1436 (9th Cir.1996) (citing *United States v. Springer,* 51 F.3d 861, 865 (9th Cir.1995)). Gorman's motion to exclude evidence under FED. R. EVID. 404(b) was scheduled to be decided before trial—not after or even during trial.

Nor does Gorman's case fall within one of the "qualifications" of this broad rule excluding all delay from the filing of a pretrial motion to the hearing on that motion. *Clymer,* 25 F.3d at 831 n. 6. This is not a case where there were unsuccessful attempts "to obtain hearings on the pretrial motions or ... hearings [that] were 'deliberately refused with intent to evade the Speedy Trial Act.'" *Id.* (citation omitted). Thus, there was no violation of the Speedy Trial Act.

## IV. CONCLUSION

Because it appears the District Court equated the "reason to believe" standard

of *Underwood* with "reasonable suspicion" instead of probable cause, we REVERSE the District Court's denial of Gorman's motion to suppress evidence seized by the police. We REMAND to the District Court for further proceedings to apply the "reason to believe" standard as clarified in this opinion. We, however, AFFIRM the District Court's denial of Gorman's motion to dismiss the indictment for violation of the Speedy Trial Act. AFFIRMED in part, REVERSED in part, and REMANDED. Each side to bear its own costs.