**Silvio SOLIS–ALARCON, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al, Defendants.**

**Civil No. 05–1987(SEC).**

United States District Court, D. Puerto Rico.

Sept. 21, 2007.

Luis A. Melendez–Albizu, Luis A. Melendez Albizu Law Office, San Juan, PR, for Plaintiffs.

Fidel A. Sevillano–Del–Rio, United States Attorney's Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Before the Court are Federal Defendants' Motion for Summary Judgment (Docket # 77) and Plaintiffs' Motion Requesting Order under Rule 37(c)(1) (Docket # 90). Because the latter motion seeks to strike a death blow to the summary judgment motion by requesting that the Court exclude all evidence submitted in support thereof, we address it first and then turn to the summary judgment motion.

In order to clarify, however, we note that the briefing of the motions is as follows: Federal Defendants' Motion for Summary Judgment (Docket # 77) was opposed by Plaintiffs at Docket # 92, Federal Defendants replied to such opposition at Docket # 112 and Plaintiffs sur-replied at Docket # 115; Plaintiffs' motion under Rule 37(c)(1) (Docket # 90) was opposed by Federal Defendants at Docket # 94, Plaintiffs replied at Docket # 105 and Federal Defendants sur-replied at Docket # 112.[1]

### I. Exclusion of Evidence pursuant to Fed.R.Civ.P. 37

Plaintiffs request that the Court exclude the evidence Federal Defendants submitted in support of their request for summary judgment. The ground for Plaintiff's request is that Federal Defendants did not disclose and/or produce documents that, pursuant to Fed.R.Civ.P. Rule 26(A)(1)(B) and 26(e), should have been so disclosed and/or produced. Plaintiffs complete this

1. At this time the motions at the following dockets are also pending: Dockets # # 93, 110, 113, and 116. These motions seek either extensions of time to file either oppositions or reply or sur-reply briefs or request that other documents be stricken. Those motions seeking extensions of time (Dockets # # 93 and 113) are hereby **GRANTED**. Those requesting that other documents be stricken from the record (Dockets # # 110 and 116) are hereby **DENIED**.

argument by pointing to Fed.R.Civ.P. 37(c)(1)'s exclusion provision. Federal Defendants argue that no such remedy is necessary; that they did not fail to comply with the requirement of Fed.R.Civ.P. Rule 26, and that Plaintiffs' motion is simply a subterfuge to cover up their failure to conduct discovery within the time allotted by the Court.

We provide a brief procedural background. The parties filed a Joint Rule 26 Report on June 22, 2006 (*see,* Docket #54). Therein, Federal Defendants identified the following items as pertaining to Rule 26(a)(1)(B) disclosures:

(1) DEA–6, Report of Investigation (ROI), prepared on Sept. 18, 2003 by SA Felton Cameron.

(2) DEA–6, Report of Investigation (ROI), prepared on April 12, 2003 by José O. Rodríguez.

(3) DEA–6, Report of Investigation (ROI), prepared on April 15, 2003, by Task Force Agent Carlos Strubbe.

(4) DEA Memorandum dated March 18, 2003, review of DEA Quick Release Policy for Seized Property.

(5) DEA Seizure Form, Asset No. 03–DEA–426573.

(6) Vehicle Indemnity Agreement, Asset No. 03–DEA–426573.

(7) Claim for Damage, Injury or Death, dated Sept. 20, 2004, submitted by Migdalia Marques Roberto.

(8) Claim for Damage, Injury or Death dated Sept. 20, 2004, submitted by Silvio Solís Alarcón.

(9) Arrest Warrant for Juan Díaz Suazo.

Docket #54, p. 4. After listing the above items, Federal Defendants added:

These documents shall be produced forthcoming. Defendants reserve the right to supplement the foregoing list.

The information regarding any other document to be initially disclosed pursuant to Fed.R.Civ.P. 26(a)(1), if any, will be provided by Defendants in response to Plaintiffs' First Set of Interrogatories and Document Requests.

*Id.* at p. 5.

We turn now to the motion for summary judgment. In support thereof, Federal Defendants included the following evidence:

(1) DEA Operational Plan, prepared by DEA agents Avilés, Feliciano, Rodríguez, and Harris, and dated September 17, 2003. (Docket #78–2)

(2) Plaintiffs' Answers to Defendants' First Set of Interrogatories (Docket #78–6)

(3) DAVID Information regarding registered vehicles. (Docket #78–3, p. 8–10; Docket #78–8)

(4) Carlos R. Strubbe's June 23, 2003 Report of Investigation. (Docket #78–3, p. 11–12)

(5) Several photographs, with handwritten captions identifying the locations. (Docket #78–3, p. 13–16)

(6) Felton Cameron's October 9, 2003 Report of Investigation. (Docket #78–5, p. 4–6)

(7) Greg Calam's February 18, 2004 Personal Story Report (Docket #78–11, p. 8–9)

(8) Juan Díaz–Suazo's prints

(9) Declarations by Roberto Cruz–Pérez (Docket #78–3); Greg Calam (Docket #78–4); Felton Cameron (Docket #78–5); Fernando Colón (Docket #78–7); Miguel Meléndez (Docket #78–9); Julio Abreu–Lora (Docket #78–10); Pablo Rivera (78–11).[2]

---

**2.** It bears noting that all of these individuals were identified by Federal Defendants as part

(10) Arrest warrant for Juan Díaz Suazo (Docket # 78–4)

Before delving into the intricacies of Fed.R.Civ.P. Rules 26 and 37, a few clarifications are in order. Plaintiffs allege that Federal Defendants failed to produce the documents disclosed as per the Rule 26 Report, despite the fact that the latter stated in such report that production would be forthcoming. Federal Defendants have not addressed this point in their opposition to the motion to exclude. Accordingly, the Court concludes that Federal Defendants failed to produce the documents, despite their assertion that they would. The Court notes, also, that although among the documents identified by Federal Defendants in the initial disclosures there are several reports of investigation identified by date and author, the reports of investigation submitted in support of the motion for summary judgment bear different dates. For example, Federal Defendants included in their initial disclosures a September 18, 2003 Report of Investigation by Felton Cameron, but the Report of Investigation by Cameron submitted with the motion for summary judgment is dated October 9, 2003. The Court assumes that these are two different documents and treats them as such.

There are two separate R. 26 issues facing the Court: (1) whether Federal Defendants ran afoul of the rule when they disclosed but failed to *produce* the documents identified in the Rule 26 Report (Docket # 54) and (2) whether their failure to *disclose* the remaining documents used in support of the summary judgment motion (other than the declarations by the witnesses) also constituted a violation of the duty to disclose and supplement such disclosures.

of their Fed.R.Civ.P. Rule 26(a)(1)(A) disclo-

■ Fed. R. 26(a)(1)(B) requires a party "without awaiting a discovery request," to provide "a copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment." Subdivision (e) of Fed. R.Civ.P. 26, in turn, orders supplementation of initial disclosures made pursuant to subdivision (a) "if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Plaintiffs would have us hold that because Federal Defendants did not produce the documents they disclosed, despite having stated that production would be forthcoming, they ran afoul of Fed. R. 26(a)(1)(B). The Notes by the Advisory Committee to the 1993 Amendments to Rule 26 address the issue of disclosure vs. production squarely:

> Unlike subparagraphs (C) and (D), subparagraph (B) does not require production of any documents. Of course, in cases involving few documents a disclosing party may prefer to provide copies of the documents rather than describe them, and the rule is written to afford this option to the disclosing party. If, as will be more typical, only the description is provided, the other parties are expected to obtain the documents desired by proceeding under Rule 34 or through informal requests.

Per the above, we conclude that Federal Defendants could have met their Fed. R.Civ.P. Rule 26(a) obligation by merely

sures. *See,* Docket # 54, p. 2–3.

describing to Plaintiffs the documents in their possession/custody/control that could be used in support of their claims and defenses. Federal Defendants, however, voluntarily assumed the further duty to produce the initially disclosed documents "forthcoming". Rule 26(a)(1)(B) poses no bar for such conduct; indeed, as the Advisory Committee Notes reflect, the rule allows for the possibility that a defendant produce the documents subject to initial disclosures.

A question remains, however, as to the appropriate sanction for such failure. Strictly speaking, Federal Defendants failed to comply with a self-imposed duty, not one contained in Fed.R.Civ.P. 26(a)(1)(B). The sanctions included in Fed.R.Civ.P. 37(c)(1) refer to failures to comply with Rules 26(a) or 26(e)(1) and (2). Here, Plaintiffs were aware not only of the existence of the initially disclosed documents, but also of Federal Defendants' pledge to produce them shortly. When Federal Defendants delayed in such production, Plaintiffs could and should have recurred to formally requiring Federal Defendants to comply with their duty. To that end, the Court notes that Plaintiffs could have attempted—via letter or email—to remind Federal Defendants of the pendency of the production of documents and, if that proved unsuccessful, recur to a request pursuant to Fed. R.Civ.P. 34. That latter tactic, in turn, would have placed Plaintiffs in the position of applying to the Court for relief under Rule 37(a) if Federal Defendants remained unresponsive. Plaintiffs, however, did not take these steps. Instead, Plaintiffs sat idly by and let the discovery deadline expire without pursuing the promised production of documents. Even at the close of the discovery period, when Counsel for Plaintiffs unsuccessfully requested an extension of time to conclude discovery (see Docket # 69) alleging that several problems had marred discovery, no mention was made as to Federal Defendants' failure to comply with their self-imposed production duty.

Under the circumstances outlined above, we cannot state that exclusion of the documents Federal Defendants identified as part of their initial disclosures would be warranted. To be sure, Counsel for Federal Defendants' conduct of pledging production of documents and later reneging on such promise is far from exemplary. But opposing Counsel was aware of the pendency of production and, ultimately, each party has to vigorously pursue its case in a timely manner. Crying foul as to discovery on the summary judgment stage, several months after Plaintiffs became aware that Federal Defendants had failed to live up to their word, does not comport with diligent litigation. Accordingly, Federal Defendants will be allowed to use those documents that they identified in their initial disclosures even if they did not timely produce the same. Federal Defendants are **ORDERED** to furnish Plaintiffs with copies of any such document which has yet to be produced.

Having taken care of the documents that were initially disclosed but not produced, we turn to the thornier issue of the documents that were not even disclosed as part of the initial disclosures or supplementation thereof. Federal Defendants do not deny that they failed to disclose documents other than those listed in the Rule 26 Report, nor do they argue that these additional documents fall outside the scope of Rule 26 because they were not in their "possession, custody, or control", because they would not use them "to support [their] claims or defenses", or, with regards to Rule 26(e) supplementation, because the information had "otherwise been made known to the other parties during

the discovery process or in writing." Instead, Federal Defendants appear to be arguing that they did not have to supplement *motu proprio* their disclosures because in the Joint Rule 26 Report they stated that "[t]he information regarding any other document to be initially disclosed pursuant to Fed.R.Civ.P. 26(a)(1), if any, will be provided by Defendants in response to Plaintiffs' First Set of Interrogatories and Document Requests" (Document # 54, p. 5).[3]

The Court is unpersuaded by Federal Defendants' contention. Rule 26 imposes upon parties a duty of disclosure—and supplementation of such disclosure—that operates without the need of any discovery request. As the Advisory Committee stated in its notes to the 1993 Amendments:

> [T]his subdivision imposes on parties a duty to disclose, without awaiting formal discovery requests, certain basic information that is needed in most cases to prepare for trial or make an informed decision about settlement ...
>
> A major purpose of the revision is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information, and the rule should be applied in a manner to achieve those objectives.

Although the 1993 Amendments allowed for some flexibility, permitting Courts to opt-out of the Rule 26 disclosures requirement, the rule was amended once more in 2000 with the specific purpose of establishing "a nationally uniform practice". *See,* Advisory Committee Notes, 2000 Amendments. The language of the Rule, as it stands, requires uniform disclosures and supplementation thereof in all cases except those exempted thereby. Rule 26 does not contemplate the possibility of litigants agreeing to bypass such duty. Simply put, the parties could not circumvent Rule 26 and its requirements by announcing that they would not make further disclosures in the absence of interrogatories or requests for production of documents.

Accordingly, Federal Defendants were subject to Rule 26's duty to disclose documents in their possession, custody or control that they could use in support of their claims and defenses and to seasonably supplement such disclosures. Having failed to do so, they must face the penalties imposed by Fed.R.Civ.P. 37(c)(1), which provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Federal Defendants have not argued that they had substantial justification for their failure to disclose, or that such failure was harmless. Accordingly, we find Rule 37(c)(1) applicable, and, as such, we will exclude the following evidence:

(1) DEA Operational Plan, prepared by DEA agents Avilés, Feliciano, Rodríguez, and Harris, and dated September 17, 2003. (Docket # 78–2)

(2) DAVID Information regarding registered vehicles. (Docket # 78–3, p. 8–10; Docket # 78–8)

(3) Carlos R. Strubbe's June 23, 2003 Report of Investigation. (Docket # 78–3, p. 11–12)

(4) Several photographs, with handwritten captions identifying the locations. (Docket # 78–3, p. 13–16)

---

**3.** It bears noting that Plaintiffs made an equivalent statement at the conclusion of their disclosures. *See,* Docket # 54.

(5) Felton Cameron's October 9, 2003 Report of Investigation. (Docket # 78–5, p. 4–6)

(6) Greg Calam's February 18, 2004 Personal Story Report (Docket # 78–11, p. 8–9)

(7) Juan Díaz–Suazo's prints

Accordingly, in support of Federal Defendants' motion for summary judgment, the Court will only take into account the statements prepared in support of the motion, as these are all by persons whose identities Federal Defendants disclosed pursuant to Fed.R.Civ.P. 26(a)(1)(A), the warrant for Díaz–Suazo's arrest, and Plaintiffs' responses to interrogatories.

## II. Summary Judgment

### Standard of Review

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 425 F.3d 67, 77 (1st Cir.2005). In reaching such a determination, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668 (1st Cir.1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" *Depoutot v. Raffaelly,* 424 F.3d 112, 116 (1st Cir.2005) quoting *Garside,* 895 F.2d at 48 (1st Cir. 1990). By like token, "material" "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico,* 394 F.3d 40, 42–43 (1st Cir.2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side." *Id.* (citations omitted).

### Factual Background

Because we are faced with a motion for summary judgment, the Court will recite the facts from the properly supported portions of the parties' statements in support and in opposition to summary judgment (Dockets # # 78–1, 91–1):

On September 18, 2003, a group of agents arrived at Plaintiffs' house on or about 5:30 a.m. in order to execute a warrant for the arrest of Juan Díaz–Suazo. *See,* Dockets # 78–1 ¶ 17, # 91–1, ¶ 17.[4]

---

4. Although the parties agree on that point, they disagree as to the number of agents involved in the execution of the arrest warrant. Defendants state that there were seven,

Juan Díaz–Suazo was sought by the DEA in connection with an investigation into a drug trafficking organization led by one Felix Rafael Egipciaco. *See,* Docket # 78–1, ¶¶ 8–10. Upon entering Plaintiffs' home, the agents inquired whether Plaintiffs knew Díaz–Suazo and Plaintiffs replied that they did not. *Id.* at 18. The agents then searched the house for Díaz–Suazo. *See, Id.* at 19, Docket # 91–1 ¶ 19. After that, the agents seized Plaintiffs' red Dodge Durango, license plate number EBK–373, because it was used in connection with a drug offense. *See,* Docket # 78–1, ¶ 22.[5] The vehicle was later released. *Id.*

The DEA agents, along with support from other agencies, sought to execute the warrant for Díaz–Suazo in Plaintiffs' home because they believed him to be residing there. *See, Id.,* ¶ 11. Some months prior to the date of the execution of the arrest warrant, state police agents Roberto Cruz and Pablo Rivera had observed Díaz–Suazo drive a red Dodge Durango, with license plate # EBK–373, to a beauty salon to carry out a drug transaction with Egipciaco. *See, Id.* at ¶¶ 12, 14.[6] In order to identify the driver of the red Dodge Durango, another state police agent, Fernando Colón, effected a traffic stop and, upon requesting the driver's license and the li-

cense and registration for the vehicle found out that the driver was Díaz–Suazo, and that his license identified his address as Urb. Villa Fontana 4U–S7, Vía 37, Carolina, P.R. 00982 and that the vehicle was registered to Silvio Solís–Alarcón, with address Urb. Brisas de Canóvanas, Calle Alón, Carolina, P.R. 00985. *See, Id.,* ¶ 13.[7] Agents Cruz and Rivera later observed Díaz–Suazo drive the car to Alondra St. # 17, Urb. Brisas de Canóvanas and park it in the garage. *Id.* at ¶ 14. Later surveillance showed the same car parked in front of Plaintiffs' home or at the beauty salon. *Id.* at ¶¶ 14, 16. The same agents also conducted surveillance on the Urb. Villa Fontana 4U–S7 address and determined that Díaz–Suazo did not reside there. *Id.* at ¶ 14. The information gleaned by the state police agents was passed on to Co-defendant Calam. *See,* Docket # 78–4. Co-defendant Calam, in turn, informed Co-defendant Cameron that Díaz–Suazo's address was Alondra St. # 17, Urb. Brisas de Canóvanas. *See,* Docket # 78–5.

In response to Federal Defendants' evidence regarding their belief that Díaz–Suazo resided at Plaintiffs' home, Plaintiffs argue that the evidence submitted by Federal Defendants does not establish that

---

whereas Plaintiffs claim to have seen fifteen agents. *See,* Dockets # 78–1, ¶ 17, # 91–1, ¶ 17. We do not find that this presents a genuine issue of material fact and, for the purposes of this opinion, take as true Plaintiff's version.

5. Plaintiffs posit that this paragraph is supported by evidence that must be excluded. But Special Agent Cameron's declaration, which is not subject to exclusion, directly addresses the seizure of the Dodge Durango.

6. Although Plaintiffs would have us discount paragraphs twelve and fourteen of Federal Defendants' Statement of Facts (Docket # 78–1) because, they argue, such paragraphs are

allegedly supported by some of the evidence that must be excluded pursuant to Fed. R.Civ.P. 37, this is plainly incorrect. The paragraphs are supported by the declaration of Roberto Cruz–Pérez (*see* Docket # 78–3) and not by the evidence that Federal Defendants failed to disclose.

7. As with paragraphs twelve and fourteen, Plaintiffs argue that paragraph thirteen of Federal Defendants' statement should not be taken into account because the supporting evidence should be excluded. Again, that is incorrect. Paragraph thirteen is supported by the declaration of Fernando Colón (Docket # 78–7).

Díaz–Suazo lived or resided in Plaintiffs' home. *See,* Docket # 91–1, ¶ 14.

**Applicable Law and Analysis**

■■■ In essence, Federal Defendants' request for summary judgment rests on their argument of entitlement to qualified immunity. "Government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Stated more succinctly, qualified immunity "protects public officials against section 1983 liability so long as they acted reasonably." *Joyce v. Town of Tewksbury,* 112 F.3d 19, 22 (1st Cir.1997) (citations omitted). The qualified immunity analysis is the same regardless of whether the action is brought pursuant to 42 U.S.C. § 1983 or *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Wilson,* 526 U.S. at 609, 119 S.Ct. 1692.

■■■ The First Circuit applies a three-part test to determine whether an official is entitled to qualified immunity, "asking '(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether the right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable officer would have understood that the challenged action violated the constitutional right at issue.' " *Guillemard–Ginorio v. Contreras–Gomez,* 490 F.3d 31, 38 (1st Cir. 2007) (quoting *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir.2004)). The Court may deny qualified immunity only if the answer to all three questions is in the affirmative. *Id.*

Plaintiffs' claim, in essence, is that Federal Defendants detained them and searched their home without any authorization therefor. Federal Defendants' argument as to qualified immunity hinges on their having a valid warrant for Juan Díaz–Suazo's arrest and the belief that Díaz–Suazo resided at Plaintiffs' house. Plaintiffs would have us dismiss such argument merely on the basis of our having previously ruled against Federal Defendants on the qualified immunity issue at the motion to dismiss stage. At that point, however, the Court was limited to the allegations set forth in the complaint. Free of such constraint, the Court now reviews the facts properly supported by the evidence on the record (that which has not been excluded). In light of such facts and the applicable case law, we now conclude that Federal Defendants are entitled to qualified immunity.

■■■ Our analysis begins with two Supreme Court decisions: *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and *Steagald v. U.S.,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). The former stands for the proposition that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton,* 445 U.S. at 603, 100 S.Ct. 1371. The latter teaches us that an arrest warrant is not sufficient authorization to enter the home of a third party—*i.e.,* one who is not the subject of the arrest warrant—in search for the would be arrestee. Instead, when the police seek to execute an arrest warrant for one who is a guest at another person's home, they must secure a search warrant for the third party's home, obtain the third party's consent for the search, or exigent circumstances must be present.

*Steagald,* 451 U.S. at 213–214, 101 S.Ct. 1642. Accordingly, an arrest warrant is enough to enter the purported arrestee's home in order to arrest him, but a search warrant must also be obtained if the police seek to arrest the subject of the warrant at another person's home.

■ What neither *Payton* nor *Steagald* address is what occurs when the police mistakenly believe that the house in which they seek to execute the arrest warrant is the arrestee's residence. Several circuits have addressed that vacuum, among them the Tenth Circuit, which has stated:

> In a *Payton* analysis, this court recognizes a two-prong test: officers must have a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry. *Valdez v. McPheters,* 172 F.3d 1220, 1224–25 (10th Cir.1999) (rejecting argument "reasonable belief" standard is the equivalent of "probable cause"). Thus, whether *Steagald* or *Payton* applies is resolved under the first prong of the test.
> *U.S. v. Gay,* 240 F.3d 1222, 1226 (10th Cir.2001).

A number of circuits—the Second, Third, Fifth, Sixth, Eighth, Eleventh, and D.C. Circuits are in accord that the police will have acted in a manner consistent with *Payton* so long as they have a **reasonable belief** that the person for whom they have an arrest warrant resides at the home where they seek to execute the warrant and is present therein at the time. *See, U.S. v. Barrera,* 464 F.3d 496 (5th Cir.

2006); *U.S. v. Pruitt,* 458 F.3d 477 (6th Cir.2006); *U.S. v. Thomas,* 429 F.3d 282 (D.C.Cir.2005); *U.S. v. Bervaldi,* 226 F.3d 1256 (11th Cir.2000); *U.S. v. Lovelock,* 170 F.3d 339 (1999); *U.S. v. Route,* 104 F.3d 59 (5th Cir.1997); *U.S. v. Risse,* 83 F.3d 212 (8th Cir.1996); *U.S. v. Magluta,* 44 F.3d 1530 (11th Cir.1995); *U.S. v. Lauter,* 57 F.3d 212 (2nd Cir.1995); *U.S. v. Edmonds,* 52 F.3d 1236 (3rd Cir.1995), *vacated in part on other grounds,* 80 F.3d 810 (3rd Cir.1996). The Ninth Circuit adheres to a stricter view, requiring the equivalent of probable cause to believe that the arrestee lives at a residence and is present therein at the time the police seek to execute the arrest warrant. *See, U.S. v. Gorman,* 314 F.3d 1105 (9th Cir.2002). *See also, U.S. v. Harper,* 928 F.2d 894 (9th Cir.1991) (requiring probable cause to believe that the subject of arrest warrant lives at a residence in order to execute the arrest warrant at that residence.) [8] While the First Circuit has yet to face this issue, it has made some statements in passing that lend support to the reasonable belief standard espoused by the Second, Third, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits. *See, U.S. v. Weems,* 322 F.3d 18, 22 (1st Cir.2003) (citing *U.S. v. Gay,* 240 F.3d 1222); *U.S. v. Calderon,* 77 F.3d 6, 9 n. 1 (1st Cir.1996) (leaving open the possibility that the resident's consent to the search was not necessary and noting that the police believed that the purported arrestee, for whom the police had an arrest warrant, also lived at the residence; citing *U.S. v. Lauter,* 57 F.3d 212).[9]

---

8. The Seventh Circuit has an unpublished decision that touches upon the reasonable belief standard with regards to the would be arrestee's presence at the residence at the time the police seek to execute the arrest warrant. *See, U.S. v. Hayes,* 209 Fed.Appx. 548 (7th Cir.2006) (Unpublished).

9. The First Circuit has found "exigent circumstances" present in a number of cases in which the police executed an arrest warrant at a third party's home. *See, U.S. v. Pelletier,* 469 F.3d 194 (1st Cir.2006); *Fletcher v. Town of Clinton,* 196 F.3d 41 (1st Cir.1999); *Joyce v. Town of Tewksbury,* 112 F.3d 19 (1st Cir. 1997). Such a finding obviates any need to

Identifying the standard which the police must meet—reasonable belief that the arrestee lives at the residence—in order to, armed only with an arrest warrant, legitimately enter a residence to execute an arrest is only the first task; the standard must also be defined. In attempting to imbue the standard with meaning, the Eleventh Circuit has held that

> in order for law enforcement officials to enter a residence to execute an arrest warrant for a resident of the premise, the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry.

*U.S. v. Magluta*, 44 F.3d 1530, 1535(11th Cir.1995).

The Sixth Circuit, in turn, stated that "[r]easonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." *U.S. v. Pruitt*, 458 F.3d at 482. The Second Circuit has also explained that "[i]f the circumstances are such that a reasonable person would doubt a given representation, the officers cannot reasonably act upon that representation without further inquiry; but the constitutional requirement is that they have a basis for a reasonable belief as to the operative facts, not that they acquire all available information or that those facts exist." *U.S. v. Lovelock*, 170 F.3d at 344 (citations omitted). The remaining Circuits that have addressed the issue—other than the Ninth—[10] have not expounded on the

meaning of reasonable belief other than to state that it is a lesser standard than probable cause. *See, e.g., U.S. v. Thomas*, 429 F.3d 282, 286 (D.C.Cir.2005) ("we expressly hold that an officer executing an arrest warrant may enter a dwelling if he has only a 'reasonable belief,' falling short of probable cause to believe, the suspect lives there and is present at the time").

Turning to the factual scenarios that the several Circuits faced, we find that the closest scenario to that faced by this Court is the one presented by *U.S. v. Bervaldi*, 226 F.3d 1256. In *Bervaldi*, the police had an arrest warrant for one Bennet Derrider, who was wanted in connection with a drug operation. The police identified a vehicle that Derrider was driving and determined that it was registered to Betty Spatten at the address 3621 S.W. 129th Ave. However, the police also uncovered that Derrider had received a traffic citation while driving the car, and that the citation identified Derrider's address as 4406 S.W. 132nd Place. The police later spoke with Derrider and he provided two addresses: the 132nd Place address, which he identified as his parents' address, and the 129th Ave. address, which he identified as his address. Police also researched a computer database that linked Derrider, to both the 129th Ave. address and the 132nd Place address. Finally, police had observed Derrider leaving the 129th Ave. The police went to execute the warrant for Derrider's arrest at the 129th Ave address. The Eleventh Circuit highlighted the need to take into account "common sense factors" in evaluating the reasonableness of the police's belief that the subject of an arrest

address the police's belief—and the reasonableness thereof—as to whether the arrestee resided at and was present in the house at the time the arrest warrant was executed.

10. As explained above, the Ninth Circuit essentially requires that the police have proba-

ble cause to believe that the arrestee resides at and is present in the home where the arrest warrant is to be executed in order to find the police compliant with *Payton*. *See, U.S. v. Gorman*, 314 F.3d 1105 (9th Cir.2002).

warrant resides at a particular location. It concluded that the police held such a reasonable, albeit ultimately erroneous belief, that Derrider resided at the 129th Ave. address. In reaching that conclusion, the Eleventh Circuit emphasized that the police had observed Derrider exiting the residence and, upon interviewing him, had learned that he considered the 129th Ave. address his residence and identified the 132nd Place address as his parents' place.

In the realm of civil litigation, the police's reasonable belief that the subject of an arrest warrant lived at the home where they attempted to execute the arrest warrant has been held sufficient to entitle the officer to qualified immunity. The case of *Valdez v. McPheters*, 172 F.3d 1220 (10th Cir.1999) illustrates the point. Federal law enforcement officers attempted to execute an arrest warrant at the arrestee's mother's house. They had been told by another officer, and by the subject of the arrest warrant himself on a previous occasion, that the arrestee lived at that residence with his mother. Furthermore, the arrestee was wanted in connection with some robberies in the city and the state police had told the officers that the arrestee went into the city on week-ends, did a robbery or two, and then went to the Indian Reservation (where his mother's residence was located) during the week. Although the officers were unable to locate the arrestee at his mother's house when they went there to execute the arrest warrant, and despite the fact that the mother denied that the arrestee lived there, the Tenth Circuit found that the facts within

the officers' knowledge supported their reasonable belief that the arrestee lived at his mother's house.

While discussing *Payton* and *Steagald* and the sphere of application of each, the *Valdez* Court stated that "[r]equiring that the suspect actually reside at the residence entered would mean that officers could never rely on *Payton*, since they could never be certain that the suspect had not moved out the previous day and that a *Bivens* or a 42 U.S.C. § 1983 claim would then be made against them by another resident." *Id.* at 1225. The Court went on to explain that "*Payton* and *Steagald* cannot be understood to divide the world into residences belonging solely to the suspect on the one hand, and third parties on the other." *Id.* As such, the Court espoused—in the context of a civil case and for purposes of determining the application of qualified immunity—the rationale explained in *U.S. v. Magluta*, 44 F.3d 1530, that entry into a residence pursuant to an arrest warrant is permitted when the police have a reasonable belief that the residence is the suspect's dwelling and that he is present at the time of entry.[11]

 We now turn to the facts of this case. As stated above, Co-defendant Cameron went, along with other officers, to execute the arrest warrant for Díaz–Suazo at the Alondra St. address because he had been told, by another federal agent involved in the investigation, that the arrestee lived there. Co-defendant Calam, in turn, relied on the information provided by state police agents who were also involved in the investigation of the Egipciaco con-

---

11. Another civil right's case arising out of the police's attempt to execute an arrest warrant at a residence that turned out not to be the arrestee's is *Watts v. County of Sacramento*, 256 F.3d 886 (9th Cir.2001). The Court there concluded that an anonymous tip about the location of a murder suspect, together with the police's observations upon arrival at the scene were insufficient to support a reasonable belief that the suspect was present and resided at the address where the police attempted to execute the arrest warrant. It bears noting, however, that the Ninth Circuit essentially equates the "reasonable belief" inquiry of *Payton* with probable cause. *See, U.S. v. Gorman*, 314 F.3d 1105.

spiracy and who had carried out surveillance on the arrestee. Because both of the Federal Defendants—agents Calam and Cameron believed that Díaz–Suazo lived at that Alondra St. address on the basis of what other agents involved in the investigation and who had carried out surveillance of Díaz Suazo had informed them, we conclude that their belief was reasonable. Likewise, because the entry into Plaintiffs' house to execute the arrest warrant was done in the early morning hours, it was also reasonable for Federal Defendants to believe that Díaz–Suazo—who they reasonably believed to be residing there—would be present at the time. *See, U.S. v. Thomas,* 429 F.3d at 286 (early morning hour gave police reason enough to believe that subject of arrest warrant would be present at the place they reasonably believed to be his residence.)

Insofar as qualified immunity is concerned, then, we hold that although Plaintiffs have sketched out a claim of a violation of a clearly established Fourth Amendment right, a reasonable officer in Federal Defendants' place would not have known that he was infringing such right. Because Co-defendants Calam and Cameron acted pursuant to information provided by other team members involved in the investigation of a drug conspiracy, and because those other team members were entrusted with the role of conducting surveillance on the arrestee, Federal Defendants' reliance on the information they provided was entirely reasonable. *See, Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force,* 379 F.3d 293, 305 (5th Cir.2004) (officer who relied on information furnished by another officer as to arrestee's address and who had no reason to believe that the information was not correct or that the arrestee was likely not at the house entitled to qualified immunity).

Co-defendants Calam's and Cameron's reasonable belief that Díaz–Suazo resided at the Alondra St. residence sets the stage for a finding of entitlement to qualified immunity with regards not only to the entry into Plaintiffs' home, but also to the actions subsequent thereto. That after entering Plaintiffs' home the police detained them and conducted some type of search of the premises is consistent with both *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) and *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). After all, the police had arrived at the residence to arrest Díaz–Suazo, a known associate of a drug conspiracy, and although Plaintiffs had told them that Díaz–Suazo did not reside at the house, they did not need to take Plaintiffs' word for it. *Cf. U.S. v. Barrera,* 464 F.3d at 504 (that brothers of the subject of the arrest warrant and residents at the house in which the police suspected subject resided and was present denied that subject was present within the house "likely raised a 'red flag' that they were 'covering' for their brother and that [he] was likely within the residence.") For the reasons already explained, Defendants believed that Díaz–Suazo resided at that address. Plaintiffs have not offered any evidence that Defendants remained at the house longer than what was necessary for them to attempt to execute the arrest warrant and "dispel the reasonable suspicion of danger" that accompanied their belief that a known drug associate was present at the house. *See, Buie,* 494 U.S. at 336, 110 S.Ct. 1093; *see also, U.S. v. Bervaldi,* 226 F.3d at 1268 ("The officers conducted a protective sweep of the entire 129th Avenue residence. To the extent this sweep may have exceeded the area 'immediately adjoining the place of arrest,' we conclude that a reasonably prudent officer could believe, based on the cocked 9 millimeter pistol observed in the dwelling and the

reasonable belief that Deridder was in the dwelling, that the house harbored an individual posing a danger sufficient to permit a sweep of its entirety.") (citations omitted). Finally, although Plaintiffs seek to make much of the fact that Defendants entered their house brandishing guns, this does not make out an excessive force claim, nor have Plaintiffs provided any evidence that would lead the Court to conclude that excessive force was indeed used or that there is a genuine issue of material fact as to that point. *See, Johnson,* 379 F.3d at 305–306 (no use of excessive force where police agents entered with guns drawn, ordered her to lay down, and, when Plaintiff turned around, was advised to turn her head back and lay down or she would be shot).

## Conclusion

In short, Co-defendants Calam and Cameron are entitled to qualified immunity with regards to the claims Plaintiffs have asserted against them. The Court notes that there are claims pending against other co-defendants. However, these other co-defendants have not appeared thus far and Plaintiffs have not moved for the entry of default as to them. The Court thus **ORDERS** Plaintiff by 9/28/2007 to show cause why the pending claims should not be dismissed for lack of prosecution.

**SO ORDERED.**