**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 1 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

GARY KRATZER,

      Defendant - Appellee.

No. 00-3203
(D.C. No. 00-10020-01 JTM)
(D. Kansas.)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY** , **BALDOCK** , and **LUCERO** , Circuit Judges.

The government appeals the suppression of evidence gathered as a result of

U.S. Marshals Service deputies' entry into defendant Gary Kratzer's home to

execute a warrant for his arrest. See 18 U.S.C. § 3731. The district court

granted Kratzer's motion to suppress after it concluded that the deputies lacked a

reasonable basis for believing he was home at the time of entry. Upon

reconsideration of the district court's order, we affirm.

Appellee was previously convicted of a crime punishable by imprisonment

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The Court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

for a term exceeding one year and placed on federal probation.    In response to allegations that appellee violated the terms of his supervised release, the district court ordered the initiation of bond revocation proceedings and the issuance of a warrant for his arrest.    The warrant was issued January 10, 2000.

At noon the next day, Deputy U.S. Marshals Ingermanson and Aug went to arrest appellee at his place of employment in McPherson, Kansas, because they "had information that [appellee] started work at [that time]."  (I R. Doc. 27 at 6.) The manager told the deputies that appellee would not be at work until 8:00 p.m. because he had a drug counseling session in Salina, Kansas, at 5:30 p.m.    The deputies also were informed that appellee may have been driving a "smaller Ford car."  ( Id. at 56.)  Based on that information, they determined appellee was probably at home.

The deputies arrived at appellee's home in Geneseo, Kansas, at 2:00 p.m. and were joined by four other state and local law enforcement officers.    Kratzer lived in a "ranch-style" home with an attached two-vehicle garage.    In the periphery were some outbuildings including a detached shed.    When the deputies arrived, one of the garage doors was ajar, and they could see there were no cars inside.  A 1978 pickup truck was parked in the detached shed.  The lights inside the home were not on, and the officers heard no sounds coming from within. Although the two doors in the front and the door in the back of the home were

locked, the door leading to the home from the garage was closed but unlocked.

Aug approached the front door while Ingermanson's "attention . . . was focused on the windows to ensure [the officers'] safety . . . if someone was to try to approach" from the inside. ( Id. (testimony of Ingermanson).) Aug knocked on the door and announced his presence. Although Ingermanson later testified that "the way the sun was reflecting on the windows, it was difficult to see in the house," he "appeared to have [seen] somebody glance out the window." ( Id. at 34–35.) He alerted other officers of the perceived movement. Aug continued to knock on the front door, but no one answered. Believing that someone was inside, the officers entered the home through the unlocked door inside the garage.

The officers conducted a thorough search for appellee inside the house, but no one was found. During the search, the officers observed several rounds of ammunition in plain view. Based on this information, they obtained a warrant to search the home, and subsequently more ammunition was discovered and seized. Appellee was charged with possession of ammunition by a person previously convicted of a crime punishable by imprisonment for a term exceeding one year pursuant to 18 U.S.C. § 922(g).

"When reviewing an order granting a motion to suppress, this court accepts the trial court's factual findings unless clearly erroneous, and views the evidence in the light most favorable to the district court's finding." United States v.

Foster, 100 F.3d 846, 849 (10th Cir. 1996). "We review de novo the 'ultimate determination of Fourth Amendment reasonableness.'" United States v. Little, 18 F.3d 1499, 1503 (10th Cir. 1994) (en banc) (quoting United States v. Allen, 986 F.2d 1354, 1356 (10th Cir. 1993)); United States v. Leyva-Serrano, 127 F.3d 1280, 1282 (10th Cir. 1997).

"[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton v. New York, 445 U.S. 573, 603 (1980). The executing officers must have an objectively reasonable basis for believing that a suspect lives and can be found in the dwelling at the time of entry. Valdez v. McPheters, 172 F.3d 1220, 1225 (10th Cir. 1999). It is unquestioned that the officers who entered the home in this case had a reasonable basis for believing the suspect lived there. Accordingly, this appeal turns on whether there was an objectively reasonable basis for believing appellee was in his home at the time of entry.

"[T]he court must look at all of the circumstances present in the case to determine whether the officers entering the residence had a reasonable belief that the suspect . . . would be found within." Id. at 1226. "No single factor is . . . dispositive." Id. In conducting our inquiry, we "must be sensitive to common sense factors indicating a resident's presence." Id. (quotation omitted).

-4-

We determine the deputies lacked an objectively reasonable basis for believing appellee was in the home. The district court found the entry was "based primarily on Deputy Ingermanson's belief that he saw someone look out a window and hide." United States v. Kratzer, No. 00-10020-01 JTM, 2000 WL 882434, at *3 (D. Kan. June 5, 2000). Deputy Ingermanson admitted, however, that "the way the sun reflected on the windows, it was difficult to see in the house," that he briefly saw a "movement of what appeared to be a person," and that he could not in any way describe the person he thought he saw. (I R. Doc. 27 at 32–34.)

The government points to other facts to support the officers' entry, specifically that:

> (1) the garage door was open; (2) the door from the garage to the house was unlocked; (3) the defendant was not working at noon and was not expected to be at a drug counseling session until 5:30 p.m. that day; (4) there was an absence of evidence that the defendant was elsewhere; and (5) a pickup truck was parked in a detached shed.

(Appellant's Br. at 8.) We agree that the presence of an automobile near the dwelling, the time of day, the suspect's employment circumstances, and absence of evidence that the suspect is elsewhere are relevant factors in conducting our inquiry. Valdez, 172 F.3d at 1226; see United States v. Lauter, 57 F.3d 212, 215 (2d Cir. 1995) (concluding that officers' knowledge that the suspect was unemployed and typically slept late was a factor in justifying their reasonable

belief that the suspect was home at 8:30 a.m.); United States v. Morehead, 959 F.2d 1489, 1496 (10th Cir. 1992) (holding that the presence of a car in the carport and a truck parked in front of the house justified the "mere act of walking to the back of the house"); United States v. Terry, 702 F.2d 299, 319 (2d Cir. 1983) (concluding that agents' arrival at 8:45 on Sunday morning, "a time when they could reasonably believe [the suspect] would be home," was a factor in justifying the agents' entry into the suspect's apartment). Viewing the circumstances in this case in their totality, however, we determine that the deputies did not have an objectively reasonable belief appellee was home. As the district court explained,

> No one answered the door when Deputy Aug knocked. Although the door inside the garage that led to the house was unlocked, all other doors leading from the outside of the house to the inside were locked. No lights were on in the home, and there were no sounds coming from within. The only vehicle on the premises was an old Chevy truck located in the detached shed, several yards away from the house. Deputy Aug testified that the officers did not have a good description of the vehicle Kratzer typically drove, but they had been told he would probably be driving a small Ford sedan. No vehicles matching that description were found on Kratzer's property. In fact, there were no vehicles parked in the garage, on the drive, or in front of the home.

Kratzer, No. 00-10020-01 JTM, 2000 WL 882434, at *3. Because the deputies' entry into appellee's home was based on the objectively unreasonable belief that

-6-

appellee was there, we conclude that the district court's suppression order was appropriate. Accordingly, the order is **AFFIRMED** .

Entered for the Court


Carlos F. Lucero
Circuit Judge