**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 10, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

ARTURO MAGANA CHAVEZ,

Defendant - Appellee.

No. 13-4098
(D.C. No. 2:11-CR-00384-DN-BCW-1)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BACHARACH**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

## I.    Introduction

Defendant-Appellee Arturo Chavez was charged in a federal indictment with being a felon in possession of a firearm.  Chavez sought to suppress the firearm and other relevant evidence as fruit of an illegal search of the home in which he was arrested.  Applying the principles set out in *Payton v. New York*, the district court concluded officers did not have a reasonable belief that Chavez

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

lived in the home or was present at the time officers entered the curtilage. 445 U.S. 573, 603 (1980). Accordingly, the court granted Chavez's motion. The Government then brought this appeal, challenging the district court's ruling. Exercising jurisdiction pursuant to 18 U.S.C. § 3731, we **affirm** the district court's order granting Chavez's suppression motion.

## II. Background

Because the Government has disavowed any challenge to the district court's factual findings, our brief summary of the facts is taken directly from the district court's order.

On April 27, 2011, Officer Brett Miller of the Taylorsville Police Department met with a confidential informant ("CI"). The CI told Miller he was "very familiar" with Chavez and knew there was a warrant for his arrest. He told Miller that Chavez was a member of the "Diamond Street" gang and went by the gang name "Wizard." He also told Miller that Chavez had been living in a home located at 154 West Westwood Avenue in Salt Lake City (the "Westwood house"). The CI indicated the house was located on the north side of the street and had a "For Sale" sign in the front yard. He said the property was owned by one of Chavez's family members but was vacant because it did not have running water. After meeting with the CI, Miller confirmed the existence of an outstanding arrest warrant for Chavez. The address in the warrant, however, was not the address of the Westwood house.

Shortly after midnight, Miller drove to the Westwood house, which he recognized by the "For Sale" sign in the yard. There was a car parked in the driveway but no lights were on inside the house. As Miller was driving away, he observed a vehicle arrive at the home and back into the driveway. Miller circled back and saw a female exiting the passenger seat of the vehicle. He did not see the driver, although the driver's door was open. Miller ran the license plate and learned the car was registered to Jenny Lopez. The address of the Westwood house was the address on the registration. The background check Miller ran on Lopez revealed she had "some documentation"[1] with a person named Christopher Gonzales. Miller also determined that Christopher Gonzales had previously resided in the Westwood house and was related to Chavez. He did not, however, determine who owned the Westwood house or whether the owner was related to Chavez.

Miller arranged for members of a Joint Criminal Apprehension Team ("JCAT") to set up a containment area around the Westwood house. Detective Levi Hughes took up a position at the rear of the house, passing through an open gate in a fence that enclosed the backyard. Hughes looked into the interior of the home by peering through a gap in the blinds. He observed Chavez retrieve a handgun from under a sofa. JCAT officers repeatedly commanded Chavez to exit

---

[1]When he testified at the suppression hearing, Miller did not explain what he meant by "some documentation."

the home but he refused to comply. A search warrant was obtained from a state judge and members of the Salt Lake City Police Department introduced tear gas into the home. The female who Miller observed at the beginning of the stand-off exited the home and told officers Chavez was inside and armed with a firearm. Chavez eventually surrendered and was arrested. The home was searched and officers located the firearm.

Chavez was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress the evidence discovered during the search of the Westwood house, arguing Detective Hughes violated the Fourth Amendment by breaching the curtilage of the home without a warrant. *See Oliver v. United States*, 466 U.S. 170, 180 (1984) ("[T]he curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life and therefore has been considered part of home itself for Fourth Amendment purposes." (quotation and citation omitted)). Chavez further argued the outstanding arrest warrant did not justify the warrantless entry onto the property because any belief officers had that he lived in the Westwood house and was present on the night of the search was not reasonable. *See Payton*, 445 U.S. at 603 ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.").

The district court held an evidentiary hearing, at which Officer Miller testified at length about the information he received from the CI and his subsequent investigation, including his observations on the night of Chavez's arrest. After the hearing, the parties fully briefed the issue and presented additional oral arguments to the district court. The court thereafter granted Chavez's motion, concluding police lacked a reasonable belief Chavez lived at the Westwood house and lacked a reasonable belief he was present at the time they entered the curtilage.

## III.  Discussion

When reviewing the grant of a motion to suppress, this court examines the evidence in the light most favorable to the defendant and accepts the district court's factual findings unless they are clearly erroneous.[2] *United States v. Nielson*, 415 F.3d 1195, 1198 (10th Cir. 2005). The determination of whether a Fourth Amendment violation has occurred, however, is reviewed de novo. *United States v. Oliver*, 363 F.3d 1061, 1065 (10th Cir. 2004).

In *United States v. Gay*, this court interpreted *Payton* as creating a two-part test to determine when officers are justified in entering a home based on an arrest warrant. 240 F.3d 1222, 1226 (10th Cir. 2001). The "officers must have a reasonable belief the arrestee (1) lived in the residence, and (2) is within the

[2]The Government makes no argument that the district court's factual findings are clearly erroneous. Neither does it argue the backyard of the Westwood house is not an area protected by the Fourth Amendment.

residence at the time of entry." *Id*. Here, the district court concluded neither prong of the test was satisfied. It is unnecessary for this court to decide whether the officers had a reasonable belief Chavez lived in the Westwood house, because, even if they did, we conclude they did not have an objectively reasonable belief he was present at the time they entered the curtilage.

We have previously cautioned that "courts must be sensitive to common sense factors indicating a resident's presence." *Valdez v. McPheters*, 172 F.3d 1220, 1226 (10th Cir. 1999) (quotation omitted). Officers are not required to actually view the suspect, but the circumstances must give them a reasonable belief the suspect is present in the home. *Id*. Relevant facts include, but are not limited to, the presence of an automobile, the time of day, and the operation of lights at night. *Id*.

Here, officers entered the Westwood house after midnight. This is, admittedly, a time when a person residing there could reasonably be expected to be home. This circumstance, however, is insufficient on its own to create an objectively reasonable belief and no other factor or circumstance supports the Government's position. There was no visible indication anyone was in the home when Officer Miller first drove past. The property was dark, and the lack of lighting undercuts, rather than supports, the Government's position. Although there was a car parked in the driveway, Miller did not determine to whom the car was registered and there was no testimony the car was in operable condition.

Further, the CI had not told Miller that Chavez stayed at the Westwood house on particular days or during particular hours. *Cf. Gay*, 240 F.3d at 1225 ("Soon after disclosing the location of Mr. Gay's current residence, the informant accompanied the officers to Pottinger Street, showed them the location of the house, pointed out the duplex, *and told the officers Mr. Gay was presently in his home*." (emphasis added)).

Officer Miller then observed a car arrive at the house. A check of the vehicle, however, revealed it was registered to Jenny Lopez at the Westwood address. Although there was visible activity in the home after the vehicle arrived, that activity was consistent with Miller's observation of the female passenger exiting the vehicle. Miller did not see the driver and there is nothing in the record to support a reasonable belief that Chavez was driving Lopez's vehicle.

Because officers did not have an objectively reasonable belief Chavez could be found within the Westwood house at the time they entered the property, their entry violated his rights under the Fourth Amendment. *See Gay*, 240 F.3d at 1226 (holding under the second prong of the *Payton* test, officers entering a residence pursuant to an arrest warrant must have a reasonable belief the suspect is in the residence at the time of entry). The Government does not argue on appeal that Chavez has failed to show a factual nexus between the unconstitutional search and the evidence he challenges or that the evidence is not fruit of the poisonous tree. *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131

(10th Cir. 2000) (holding once a defendant establishes a violation of his Fourth Amendment rights and "a factual nexus between the illegality and the challenged evidence," the Government must prove the evidence is not fruit of the poisonous tree (quotation omitted)). Thus, the observations made by Detective Hughes when he peered through the blinds into the Westwood house, and the fruits of those observations, must be suppressed. As the district court noted, this includes the firearm.

## IV. Conclusion

The order of the district court granting Chavez's motion to suppress is **affirmed**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge