**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MATTHEW MALEY,

    Defendant - Appellant.

No. 20-2073

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:17-CV-01225-RB-KK and 2:13-CR-03696-RB-KK-3)**
_____

Shira Kieval, Assistant Federal Public Defender (and Virginia L. Grady, Federal Public Defender on the briefs), Denver, Colorado, for Defendant - Appellant.

Stephen White, Assistant United States Attorney (and Fred J. Federici, Acting United States Attorney on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **KELLY**, and **McHUGH**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

    Defendant-Appellant Matthew Maley appeals from the district court's denial of his 28 U.S.C. § 2255 motion. United States v. Maley, 2020 WL 1041545 (D.N.M. Mar. 3, 2020). The district court granted a certificate of appealability on (a) whether law enforcement officers had probable cause to believe that Mr. Maley would be

found within the travel trailer he was using as his residence when they entered it on November 17, 2013, with a valid warrant for his arrest, and (b) if probable cause was lacking, whether the failure of New Mexico trial counsel to seek suppression of the evidence constituted ineffective assistance of counsel (IAC). Exercising jurisdiction under 28 U.S.C. §§ 1291, 2255(d), we affirm.

## Background

In New Mexico federal district court, Mr. Maley was convicted of various conspiracy and drug offenses as well as possession of a firearm by a felon, 18 U.S.C. § 922(g)(1) and § 924(a)(2). He was sentenced to 262 months' imprisonment on the drug-related counts and 120 months' imprisonment on the felon-in-possession count to run concurrently. We affirmed his convictions on direct appeal, rejecting the argument that he was denied his choice of counsel when the district court denied his fourth motion for a continuance and required his then-counsel to proceed to trial. United States v. Maley, 681 F. App'x 685, 687–88 (10th Cir. 2017) (unpublished).

Mr. Maley also faced charges in Arizona based upon evidence found in the travel trailer. In that case, however, Arizona counsel filed a motion to suppress which was granted and ultimately the charges were dismissed. In his § 2255 motion, Mr. Maley argued that had his New Mexico counsel filed a motion to suppress, it likely would have been granted and he would not have been convicted on the felon in possession of a firearm count.

Mr. Maley was identified by Undercover FBI Special Agent Bryan Acee as a methamphetamine supplier on the morning of August 1, 2013, when Special Agent

2

Acee observed Mr. Maley consummate a drug deal out of his travel trailer. Mr. Maley was living in an RV park in Las Cruces at the time. Special Agent Acee also observed an olive-green Range Rover and a black Dodge 1500 pickup truck in the vicinity of the travel trailer.

The next morning — at around 7:00 a.m. — Special Agent Acee returned to Mr. Maley's travel trailer to take pictures but left when he noticed Mr. Maley outside. Law enforcement also encountered Mr. Maley a few days later, riding as a passenger in the Range Rover.

Officers performed a background check on Mr. Maley and, among other things, found that he was a convicted felon who could not legally possess firearms or ammunition.

In November 2013, prior to a scheduled grand jury proceeding, officers returned to the RV park, but Mr. Maley was no longer there and had not provided a forwarding address. He had moved out in late August, shortly after he had completed New Mexico state probation.

Mr. Maley was then indicted, and an arrest warrant was issued based on the drug deal Special Agent Acee had observed on August 1.

Officers found that Mr. Maley had recently applied for an Arizona ID card with a Tucson address and that he used the same address to register several vehicles. Further, they determined that Mr. Maley's wife and possibly another family member lived at that address. An agent sent to the address identified Mr. Maley's travel trailer and black pickup truck parked by his wife's double-wide trailer and four other

3

vehicles. However, the agent did not see Mr. Maley or the Range Rover. The next day, the Tucson FBI did another drive-by and noticed that some of the vehicles had moved, but they still did not see Mr. Maley or the Range Rover.

Around 9:00 a.m. on November 17, about ten officers arrived at Mr. Maley's address to make the arrest. When they arrived, they saw the black pickup truck with a towing package on it and several other cars, but not the Range Rover. The travel trailer was on blocks, its awnings were up, the stairs were down, and it was fully hooked up to electrical and septic utilities. There was also a security camera attached to the trailer, pointed at the front door, and the blinds were closed.

Mr. Maley's two adult sons were working on a car when the officers arrived and one of them called out in the direction of the double-wide trailer to warn his "mom to just not say anything." Based on this, officers became concerned that another person was on the property. Officers searched the double-wide trailer but found nobody. Officers then approached the travel trailer, but the door was locked. The officers banged on the door and called for Mr. Maley but heard no response. The officers then breached the door and entered the travel trailer.

Mr. Maley was not in the trailer, but as the officers searched, they observed a shotgun in the trailer's shower in plain view. After a further search, the officers identified thirty more firearms, which were hidden, as well as other evidence. They then seized the trailer, towed it to the FBI office, and began securing a search warrant. At the time of the search, the officers did not know the Range Rover with

4

Mr. Maley as a passenger was photographed traveling from Las Cruces to Albuquerque two days prior.

The district court determined that Mr. Maley was not prejudiced by counsel's failure to file a motion to suppress. Maley, 2020 WL 1041545, at *13. The district court determined that the initial entry of the travel trailer was lawful, although the search of the travel trailer was not. Id. at *12. The officers observed the shotgun in plain view during the initial entry of the trailer and the shotgun alone would have been sufficient to convict Mr. Maley for possession of a firearm as a felon. Id.

**Discussion**

Where a district court denies a § 2255 petition for IAC as a matter of law on an uncontested trial record, we review de novo. United States v. Rushin, 642 F.3d 1299, 1302 (10th Cir. 2011). To prevail on an IAC claim, a defendant must prove both that: (1) his attorney's "representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1994). We may address these questions "in any order, and failure under either is dispositive." United States v. Barrett, 797 F.3d 1207, 1214 (10th Cir. 2015) (citation omitted). As Mr. Maley's petition turns on counsel's failure to file a motion to suppress, we first address whether Mr. Maley was prejudiced by that decision.

We agree with the district court that Mr. Maley was not prejudiced by his lawyers' failure to file a suppression motion. Prejudice in this context requires the

5

defendant to prove that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Kimmelman v. Morrison. 477 U.S. 365, 375 (1986). Law enforcement officers found at least one gun in plain view upon their initial entrance into Mr. Maley's travel trailer. See Harman v. Pollock, 586 F.3d 1254, 1264 (10th Cir. 2009). As that would be sufficient to convict Mr. Maley of the felon-in-possession charge, Mr. Maley must show that the initial entry into the travel trailer itself violated the Fourth Amendment.[1]

As the officers had an arrest warrant for Mr. Maley but not a search warrant for his travel trailer, they could only have entered his travel trailer if there was "reason to believe the suspect [was] within." Payton v. New York, 445 U.S. 573, 603 (1980). However, there is a circuit split over the meaning of "reason to believe" under Payton. At issue here, the Ninth Circuit, where the search at issue occurred, interprets "reason to believe" to "embod[y] the same standard of reasonableness inherent in probable cause." United States v. Gorman, 314 F.3d 1105, 1112 (9th Cir. 2002). Conversely, the Tenth Circuit, where Mr. Maley was charged, interprets "reason to believe" to mean something less than probable cause. Valdez v. McPheters, 172 F.3d 1220, 1224–25, 1227 n. 5 (10th Cir. 1999). Mr. Maley urges this court to apply the law of where the search or seizure occurred — lex loci.

---

[1] The government does not contest the district court's conclusion that the subsequent search and seizure of the trailer was unlawful. Mr. Maley also does not contest that the shotgun officers saw on their initial entry was in plain view.

However, we need not decide this issue for two reasons. First, the government does not argue that we should apply the law of the Tenth Circuit. Second, as discussed below, even if we apply the higher standard of reasonableness of the Ninth Circuit, we still conclude that the officers had probable cause to enter Mr. Maley's trailer. See United States v. Denson, 775 F.3d 1214, 1217 (10th Cir. 2014) (declining to evaluate our interpretation of "reason to believe" under Payton because "nothing turn[ed] on its answer"). As such, we only evaluate whether the officers had probable cause to enter Mr. Maley's trailer.

"Probable cause is not a high bar," District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (citation omitted), and only requires a "fair probability" that the suspect would be inside, United States v. Ludwig, 641 F.3d 1243, 1252 n.5 (10th Cir. 2011). The determination is made looking at the "totality of the circumstances." Maryland v. Pringle, 540 U.S. 366, 371 (2003).

The officers had probable cause to enter the travel trailer. The government cites to ten points it argues collectively indicate that the officers had probable cause to enter the travel trailer. While many are not dispositive, several of the factors taken together support a finding that there was probable cause to enter the trailer.

Officers had a reasonable belief Mr. Maley lived in the residence, which supports a finding of probable cause. See Denson, 775 F.3d at 1217. The residence was the address on Mr. Maley's Arizona ID card, the address where his vehicles were registered, and the address where his family was living. Further, officers saw his travel trailer fully hooked up on site, and Special Agent Acee had previously seen

7

Mr. Maley living in the travel trailer. The officers also saw Mr. Maley's black Dodge pickup truck, which could also suggest that Mr. Maley was present at the address. See Valdez, 172 F.3d at 1226 ("The suspect's presence may be suggested by the presence of an automobile.").[2] While officers had never seen Mr. Maley drive the pickup truck before, it was reasonable for them to believe it was his truck. The truck was present at Mr. Maley's prior residence in Las Cruces and outfitted with a towing package, suggesting it was the vehicle Mr. Maley used to bring his travel trailer to Arizona. The officers also knew that Mr. Maley had no legitimate employment in the past six years, favoring an inference that he was home. See Denson, 775 F.3d at 1217 ("[I]t isn't unnatural to think someone might be 'at his place of abode . . . at 8:30 in the morning' when he's not working." (citation omitted)). The day and the time — Sunday at 9:00 a.m. — could also suggest that Mr. Maley would be home. See United States v. Terry, 702 F.2d 299, 319 (2d Cir. 1983) ("[T]he agents arrived at the apartment at 8:45 A.M. on a Sunday morning, a time when they could reasonably believe that [the suspect] would be home."); see also Valdez, 172 F.3d at 1226 ("The suspect's presence may be suggested by . . . the time of day.").

_____

[2] We note that the court in Valdez determined that there was a "reasonable belief" of a suspect's presence in a home but not necessarily probable cause under the circumstances of that case. See Valdez, 172 F.3d at 1224–25, 1227 n. 5. Nevertheless, the factors considered by the court in Valdez can still contribute to a finding of probable cause in other circumstances. Indeed, in this case we find that several do.

In addition, Mr. Maley's two sons were shouting warnings to someone on the property when the officers arrived. Once the officers cleared the double-wide trailer, they could reasonably believe that another person must be in the travel trailer. While the sons were apparently calling for their mom, she was not in the double-wide trailer. When the officers tried the travel trailer, nobody responded. It was reasonable for the officers to conclude that Mr. Maley likely was hiding in the travel trailer.

There is therefore no reasonable probability that the verdict against Mr. Maley would have been different had counsel filed a motion to suppress. See Strickland, 466 U.S. at 694.

Much of Mr. Maley's argument consists of contesting each factor individually. However, probable cause is determined by looking at the totality of the circumstances. See Pringle, 540 U.S. at 371. Although it does not appear that Mr. Maley knew officers were looking for him, that does not overcome the other factors that are supported. Mr. Maley also argues that the sons' shouting was not enough to create probable cause, but only cites as evidence that Special Agent Acee did not report it initially. However, another agent present during the search did say he found the shouting noteworthy because it meant "somebody could be on the property somewhere."

Mr. Maley also contests that people are more likely to be home on a Sunday morning. Mr. Maley cites to several cases where this court found that the time of day the officers searched a residence was not a dispositive factor. However, in those

9

cases, this court reached its conclusion by evaluating the circumstances as a whole, not just relying on the factor of the time of day searched alone. See United States v. Kratzer, 10 F. App'x 784, 787 (10th Cir. 2001) (unpublished); United States v. Chavez, 561 F. App'x 730, 733 (10th Cir. 2014) (unpublished). While the time of day is not dispositive, the time of day here — 9:00 a.m. on a Sunday — supports the inference, drawn from the totality of the circumstances, that there was a fair probability that Mr. Maley was in the trailer when the officers went to search it.

Mr. Maley also raises two other points. Mr. Maley notes that no officers saw Mr. Maley at the Tucson address or in Arizona at all. He further notes that officers never saw the Range Rover in Arizona as well. However, "the actual viewing of the suspect on the premises is not required" to support an inference that the suspect is within the residence. Valdez, 172 F.3d at 1226.

The failure to show that Mr. Maley's Fourth Amendment claim was meritorious is dispositive. See Barrett, 797 F.3d at 1214. We therefore do not need to address whether "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687–88.

**AFFIRMED.**